[Civ. No. 314. Third Appellate District.—May 6, 1907.]

C. M. TATE, Respondent, v. A. B. AITKEN and E. P. CASE, Appellants.

Vendor and Purchaser—Contract to Sell—Agency—Compensation of Agent.—A contract by plaintiff with defendants, by which they were authorized to sell the plaintiff's real estate for $1,000, or such less sum as plaintiff may take, and giving to defendants, as remuneration, all sums in excess of the amount stipulated for sale, does not give to the defendants an option to purchase, but is a contract of agency, under which the defendants were bound to act in the utmost good faith.

Id.—Bad Faith of Agent—Misrepresentation to Procure Larger Commission—Deed to Agent.—Where the plaintiff's agents had a contract to sell plaintiff's property for $1,300, and, to procure a larger commission, misrepresented to plaintiff that $800 was all they could get for the property, and thereby induced plaintiff to deed the property to them, for sale at that price, they acted in bad faith, and plaintiff is entitled to recover the remainder of the $1,000 from them.

Id.—Signature by Plaintiff's Wife—Authority—Ratification—Agency of Defendants for Plaintiff.—Where the plaintiff authorized his wife to sign the contract with defendants during his absence, making them their agents to sell the land upon the terms agreed upon, with the understanding with them that he would afterward sign it, and the employment of the defendants was ratified by the husband's execution of the deed to them by reason of the defendants' misrepresentation, the defendants were properly found to be the agents of the plaintiff.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order denying a new trial. Wm. M. Finch, Judge presiding.

The facts are stated in the opinion of the court.

M. J. Cheatham, and W. P. Johnson, for Appellants.

John J. Wells, for Respondent.

HART, J.—Plaintiff commenced this action for the purpose of recovering the sum of $500 alleged to be due him from de-

fendants, said amount representing, it is alleged, the difference
between the sum paid to plaintiff by the defendants for a piece
of land belonging to the former, and the sum received for
said land by said defendants on a sale of the same to a third
party, the transaction involving such sale having been con-
ducted, it is averred, by defendants as agents of plaintiff.
Plaintiff was given judgment for $200, from which and the
order denying a new trial this appeal is taken.

The defendants, at and for some time prior to the date of
the institution of this action, were copartners, engaged in the
business of buying and selling real estate, at the town of
Corning, in Tehama county. The plaintiff at the same time
was the owner of "Lot numbered 2, in the Block numbered 11,
in Richfield Colony, in the said County of Tehama." In the
month of July, 1904, the plaintiff employed said defendants
as agents, conferring upon them full authority to sell said lot,
agreeing to pay them for their services in effecting the sale
thereof so much as they might receive therefor in excess of
a certain amount fixed and stated in a certain written agree-
ment to be hereafter noticed.

It is charged in the complaint "that on the first day of
July, 1905, the defendants bargained and agreed with one W.
L. Yound, to sell and convey to him the said property for and
in consideration of the sum of thirteen hundred dollars, which
sum the said Yound then and there paid to the defendants."
It is further alleged "that thereafter the defendants, while
still the agents of plaintiff, for the purpose of making the
sale of the said property, represented to plaintiff that they
could sell the said property for the sum of eight hundred
dollars, but not for any greater sum, and they prevailed upon
the plaintiff to accept the said sum of eight hundred dollars,
in full as payment for the said property." The plaintiff, it
is alleged, thereupon executed a deed, conveying said property
to defendants, and that the latter paid to him the sum of $800;
that immediately after said transaction, "and as a part there-
of," the defendants conveyed said property to said W. L.
Yound, the latter paying to the defendants therefor the sum
of $1,300.

The answer, after denying that the land was sold to defend-
ants under the circumstances alleged in the complaint, and
denying that plaintiff employed them as agents to sell said
land, admits that the defendants purchased it at the price

mentioned, but declares that plaintiff sold the same to them upon his "own volition and without any inducements on the part of defendants other than the ordinary inducements usually made in transactions of this character." The sale of the land to Yound for the sum of $1,300 is also admitted. The answer, as a "further and second defense," sets out the alleged written agreement to which we have previously referred, the same being signed by Mrs. K. M. Tate, the wife of plaintiff, and by the defendants, dated July 14, 1904, and by the provisions of which the defendants were purported to be given power and authority to sell the land described in the complaint "for the sum of $1,000.00, or as much less as he (plaintiff) may take at any time therefor," and it was also stipulated in said agreement that the defendants, for the services of negotiating and consummating such sale, should retain, as their commission, "all over the above-mentioned sum." It is then alleged that in the month of May, 1905, and after the execution of the said written contract, "plaintiff, pursuant to the terms thereof, informed defendants that he would reduce the price of the property named therein from $1,000.00 to $800.00." The defendants further admit that when they purchased said land from plaintiff they were negotiating with said Yound for the sale of the same to him, etc.

The evidence offered by plaintiff in support of the allegations of his complaint shows, briefly stated, the following facts: That Mrs. Tate, wife of plaintiff, signed the written contract, set out in the answer, by the request and consent of the plaintiff, authorizing defendants to sell the property mentioned in the pleadings, upon the terms as therein stipulated; that plaintiff himself was also to have signed said contract, but failed to do so; that plaintiff approved the act of his wife in making and signing said contract; that on July 1, 1895, while plaintiff was absent from home, the defendant Case called at his residence, and stated to plaintiff's wife that he (Case) had a purchaser for the property if the price were reduced from $1,000 to $800; that Mrs. Tate asked time in which to consult her husband with regard to the proposition, but that Case advised her to take $800 for the property, as that was as much as could be obtained for it, and that in selling it for that sum they (the defendants) would receive no commission; that finally Mrs. Tate consented to take the responsibility of authorizing the sale of the property for the amount

mentioned; that when plaintiff returned home his wife related to him the facts of the transaction which had occurred between her and the defendant Case; that he approved and ratified her action in the acceptance of Case's proposition to pay $800 for the land, by the execution of a deed conveying the property to defendants, and left the same "at the bank" to be delivered to defendants upon the payment of the sum agreed upon; that defendants paid plaintiff the amount and received the deed, which bore date of July 5, 1905.

The foregoing represents in substance and effect the testimony given by Mrs. Tate. There was introduced in evidence a document, signed by the defendants, and dated July 1, 1905, purporting to be an acknowledgment by them of the receipt from W. L. Yound of the sum of $1,300 "payment in full Lot 2, Blk 11, 34 acres more or less, Richfield." The plaintiff testified that his wife had told him of the conversation with Case, and that believing therefrom that the sum of $800 was all that he could get for the property, conveyed the same to defendants for that sum. He stated, in reply to a question asked on cross-examination, that his wife acted for him in the matter, and that he had ratified her acts. Mr. Yound testified to having paid to defendants the sum of $1,300 for the property on the first day of July, 1905. These are in brief the facts as shown by the evidence introduced on behalf of the plaintiff.

The defendants, while admitting having entered into the contract for the sale of the land to which they and Mrs. Tate had subscribed their names, testified that subsequent to the execution thereof, the price of $1,000 called for by said contract for said property was verbally changed by plaintiff to $800. The defendant Case testified as follows: "On Friday, the 30th day of June, I told her (Mrs. Tate) we had some parties looking at the place, and that we had hopes to sell. I explained to her and told her the price we were asking for the place was thirteen hundred dollars; that we often had to make trades, and I expected if we sold the place, to have to make a deal and trade it off. I went specifically to ask her if she would take less than eight hundred dollars. It was understood that eight hundred dollars was the price. It had been talked again and again. I asked her, in case we couldn't make a sale to do any better, if we should turn

it down, if we couldn't get the eight hundred dollars for her, and she said she would rather not take less than eight hundred dollars. I told her then that if she was satisfied to take the eight hundred dollars to come down the next morning to make out the deed, and we would take our chances on selling the place. Before I had gone out to Mrs. Tate's I had taken Mr. Yound out to look at the place and on Saturday I took him out again. In the afternoon of Saturday, Mr. Yound came back to the office and after some little talk he decided to take the property at $1,300. . . . He then paid us the $1,300.00. After he had paid us the money for the place, I went out and told Mrs. Tate that she could come in and have the deed fixed up and then we would pay her the money.

"She understood that Mr. Aitken and I had bought the place from her on Friday evening. We told her we would take the place and take chances on selling it. We were taking it under and in pursuance of that contract." Defendant Aitken corroborated the testimony of Case as to an alleged conversation with Mrs. Tate in the former's office in which the latter, it was claimed, said that she would be satisfied to receive $800 for the property, and that she did not care how much defendants made over and above that sum. There was testimony to the same effect by one R. B. Aitken. In rebuttal, the plaintiff and his wife testified that, having heard, after the conveyance of the property to the defendants, the latter had sold the same for $1,300, they called on the defendant Case, repeated to him what they had learned, and he then insisted that they had received but $800 for the property from Mr. Yound, etc.

The court found that the defendants were the agents of plaintiff for the sale of the property; that as such agents of plaintiff they "bargained and agreed with one W. L. Yound to sell and convey to him the said property for and in consideration of the sum of thirteen hundred dollars, which said sum the said Yound then and there paid to defendants"; that defendants, after such sale to said Yound, represented to plaintiff that the sum of $800 could be obtained for said property, and that it could be sold for no greater sum; that plaintiff, relying on such representations, and, being in ignorance of the negotiations for the sale of the land by defendants to Yound, accepted the sum of $800 therefor, and

thereupon conveyed the same to defendants; that thereafter defendants conveyed the land to Yound.

The appellants undertake to avoid the effect of the judgment against them upon the ground that, as they seem with earnestness to contend, as to the transaction responsible for this action, they were not at any time acting as, or were, in fact, the agents of plaintiff. This contention is urged mainly upon the proposition that the written contract which purported to authorize them to sell the property was not in fact or in law the act of plaintiff, because it was not signed or executed by him. But the evidence as presented by the record justifies no such assumption. While it is true that the agreement empowering the defendants to sell the property for plaintiff does not bear his signature, and on its face appears to carry with it no other or further authority than that which his wife by her own individual act sought to confer, the testimony of the latter, which upon this point not only stands in the record absolutely uncontroverted but without any attempt at contradiction whatever, is to the effect that her husband, who was employed in a store at Vina, and had little opportunity to give personal attention to the matter, authorized her to see the defendant, Case, "and put the property in his hands as our agent"; that she called at the office of Aitken & Case, "and Dr. Case wrote out a contract with me, and I signed it, and the arrangement was that the first time my husband was in town he would call at the office and sign it, too, and it was so understood when I left Dr. Case." She further testified that her husband approved her act in signing the agreement, and had said to her that he would himself sign it at some later time. Her testimony with reference to this agreement was corroborated by her husband, who was made to say by the attorney for the appellants himself, on cross-examination, that his wife had acted for him in the transaction. Moreover, the actions of plaintiff, as disclosed by the evidence, clearly show that he ratified the acts of his wife, both in the execution of the agreement with the defendants and in the sale of the property to them. After the property had been placed in the hands of appellants for the purpose of selling it for the plaintiff, the former advertised it over their firm name for sale for the sum of $1,300 in the Corning "Observer," a newspaper published at Corning, and this advertisement came under the observation of

and was known to Mrs. Tate, and, while it does not directly
so appear from the evidence, it is a most reasonable conclusion
that plaintiff also must have known of said advertisement.

That the representation made by Case to Mrs. Tate in the
conversation after the defendants had virtually made a sale
of the property to Yound, to the effect that the sum of $800
was as much as could be secured for the land, was untrue,
and resorted to for no other purpose than to obtain a larger
commission from the sale than the defendants could otherwise
hope to receive, we think is indubitably established by the
testimony of Case himself. According to his evidence, after
he was undoubtedly satisfied that he could sell the land for
$1,300, he asked Mrs. Tate if she would not take less than
$800 for it, because that sum could not be obtained for it,
and that she refused to accept anything less than that amount,
whereupon he told her that he would take it at that figure,
and requested her to call at his office with the deed transfer-
ring it to defendants. It is true that he says that this con-
versation occurred on June 30th, the day before the sum of
$1,300 was paid to his firm by Yound for the land; but Mrs.
Tate says it took place on the evening of July 1st. The court
found the fact as testified to by Mrs. Tate, and it is sufficient
to say that, from a careful consideration of the whole record,
we are fully satisfied and in perfect accord with that finding.
It is quite evident that when Case declared to Mrs. Tate that
the sum of $800 could not be obtained for the land, that he
thus made a statement having no foundation in fact, for,
accepting his own word, when he discovered that she was
unwilling to part with the property for less than that amount,
he told her he would buy the property at that price. This,
too, in the face of repeated asseverations that he would be
unable to make any profit on the sale of the property, unless
he could secure it for less than $800. It is also a circumstance
of considerable significance that when Case, according to his
own statement as a witness, after receiving the sum of $1,300
for the property—which event occurred, it will be recalled,
before his firm acquired title to it—called on Mrs. Tate at
her house, and requested her to ''come in and have the deed
fixed up and then we would pay her the money,'' said abso-
lutely nothing of having already sold the land to Yound.
The whole affair, as it is portrayed by the evidence before
us, so far as it concerns the part taken in it by the defend-

ants, appears to bear the marks of the ambidexterity by which transactions involving real estate deals are too often characterized. The evidence fully supports the findings of the trial court, and there is no reason which the record discovers justifying the fostering of any doubt that the judgment is just and that it should be sustained. Counsel have directed our attention to the law and some cases bearing thereon with reference to the elements, the existence of which is essential to the establishment of the relation of principal and agent. We have no fault to find with the principles thus stated and presented; but, under the facts as shown by the record, they have no force here. The evidence sufficiently shows that the acts of Mrs. Tate in the transaction, from its inception to its conclusion, were first authorized and subsequently ratified by the plaintiff. It shows, as we have stated, that the defendants were, as to the sale of the property, at all the times mentioned in the complaint, agents of the plaintiff, and that they did not, in the part of the transaction involving the final disposition of the land, act in good faith with their client.

Counsel have made an attempt to maintain that the agreement, by the provisions of which defendants were made the agents of plaintiff for the sale of the property, amounts only to an option to purchase said property by the defendants. This contention is not supportable. The writing, in express and unequivocal terms, empowers and authorizes defendants, as agents of the plaintiff, to sell the property "for the sum of $1,000, or as much less as we may take at any time thereafter," and the defendants in unmistakable language agree, as agents, to sell the property and to accept as their remuneration therefor any sum which they might succeed in obtaining for it in excess of that which it was stipulated plaintiff should receive for it.

The only errors urged are based upon the insufficiency of the evidence to support the findings, and therefore, having disposed of those against the contention of appellant, it follows that the judgment and order appealed from must be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 5, 1907.