BRITTSON *v.* SMITH.

1. BROKERS—VENDOR AND PURCHASER—OPTION—CONTRACTS.
    Real estate brokers who obtain from the owner of a farm the exclusive right to procure a purchaser of it at a specified price and within a given period, any excess above the amount named to belong to the brokers, are entitled to the agreed compensation as their commission, after finding a purchaser to whom the owner refuses to convey, and although the contract is described as an option, the brokers do not stand in the relation of vendees of the property.

2. SAME—STATUTE OF FRAUDS.
   Nor is such a contract within the terms or intent of the statute
   of frauds.   3 Comp. Laws, §§ 9509, 9511.

3. CONTRACTS—INTERPRETATION.
   Contracts are to be construed with reference to all their terms.

4. SAME—MISTAKE—EQUITY—EVIDENCE—PAROL EVIDENCE RULE.
   Evidence is admissible to show that the land described in a
   contract giving to brokers the exclusive sale of land, as the
   N. W. ¼ of the N. W. ¼, and also elsewhere referred to there-
   in as defendant's "farm of eighty acres," in fact should have
   been described as the W. ½ of the N. W. ¼, since the descrip-
   tion indicated a probable mistake, and was ambiguous.

Error to Shiawassee; Miner, J.   Submitted January
19, 1911.   (Docket No. 124.)   Decided March 31, 1911.

Assumpsit by Albert Brittson and Marion Smith, co-
partners, against William H. Smith.   A judgment for
defendant on a verdict directed by the court, is reviewed
by defendant on writ of error.   Reversed.

*Albert L. Chandler* and *George E. Pardee,* for ap-
pellants.

*Odell Chapman,* for appellee.

The testimony for plaintiffs tended to prove that on or
about November 15, 1909, they made an oral agreement
with the defendant that if they would sell, or find a buyer
for, defendant's farm for such sum that the defendant
would receive $6,400 for the farm, they were to have as
their commission for selling the farm all of the purchase
price over and above $6,400; that they found a purchaser
able and willing to pay for the farm $6,400 and more;
that defendant refused to complete the sale.   The testi-
mony for the plaintiffs further tended to prove that, hav-
ing arrived at an agreement with the defendant with re-
spect to the sale of the farm, it was put in writing upon a
blank form which one of the plaintiffs had, as follows:

"Owosso, Nov. 15, 1909.

"I hereby authorize Brittson & Smith, of Mt. Pleasant, Mich., to sell or find a buyer for my farm of 80 acres, situated in Shiawassee Co., State of Michigan, described as follows, N. W. ½ of N. W. ¼, sec. 35, township Rush, 8 N., range 2 E. The undersigned owner of said property agrees also to furnish a complete abstract of title and warranty deed to us or to any one designated by us. In consideration of this option Brittson & Smith agree to advertise and make every consistent effort to sell said farm within the time herein designated. Failure to do so renders them in no way liable to the undersigned. It is also further agreed:

"*1st*. This option shall run to March 1st, 1910.

"*2nd*. The undersigned is to have $6,400.00, net, for said farm.

"*3rd*. Brittson & Smith are to have as their commission for selling said farm all of the purchase price over net price named above.

"*4th*. The said farm shall be sold on the following terms, viz., all cash, balance on time at _____ per cent. interest.

"*5th*. In case of sale all moneys are to be deposited at Citizens' Bank, Owosso, to the credit of the undersigned.

"*6th*. Brittson & Smith reserve the exclusive right to deal with any and all customers that they may bring to said farm or that may come to said farm through their advertising.

"*7th*. Brittson & Smith shall have the exclusive right to sell said farm. Possession to be given March 1st, 1910.

"W. H. SMITH.
"BRITTSON & SMITH.

"February 21st, 1910.
"This contract continued to April 1st, 1910.
"W. H. SMITH.
"BRITTSON & SMITH."

In their declaration in the first count plaintiffs declare specially upon the written agreement, alleging that the description of the premises in the agreement is inaccurate through the negligence and fault of the defendant, and that the description in the said writing should read "west half of the northwest quarter," instead of "northwest half of the northwest quarter." The damages alleged

are moneys expended in railroad fares, for livery, time expended, loss of profits in and about the neglect of other business, and the difference between $6,400 and $7,400, for which latter sum it is alleged they had arranged to sell the farm. In the second count of the declaration they allege that they were authorized by defendant to find a buyer for his farm who would pay the sum of $6,400 in cash, and that it was agreed that plaintiffs should have as a commission for their services in and about the sale the difference between the said sum of $6,400 and the price at which they could sell the premises; that they procured a buyer at the price of $7,400, and for their damages they allege that they lost the commission of $1,000, and they entered into a contract with the intending purchaser for the sale of the farm to him at $7,200, which contract they have been unable to perform because of the default of defendant, and are liable to said intending purchaser for damages for a breach of their contract with him. The third count is substantially like the second count. The declaration contains also the common counts in assumpsit.

Upon the objection of defendant, the trial court refused to receive testimony offered to prove that the description in the writing was a misdescription of the defendant's land, that he had but one farm in Shiawassee county, that the agreement of the parties related to that farm, and at the conclusion of the trial he instructed the jury in substance that while all the equities were with the plaintiffs, and that if they were entitled to recover at all they were entitled to recover the sum of $800, that plaintiffs were not entitled to show in the face of the writing by parol evidence that it was the intention of the parties that the land for which they were to find a buyer, and for which they did find a buyer, was in fact the west half of the northwest quarter of the section, and directed a verdict for the defendant. A judgment in favor of the defendant was duly entered.

The court called attention to and based his opinion, in part, upon 3 Comp. Laws, §§ 9509 and 9511, the first of which sections provides that no estate or interest in lands other than leases, etc., shall be created, unless by a deed or conveyance in writing; and the second, that every contract for the sale of any land shall be void, unless the contract or some note or memorandum thereof shall be in writing and signed by the party by whom the sale is to be made.

OSTRANDER, C. J. (*after stating the facts*).    It is apparent that the court construed the writing as counsel for the defendant construed it, as one for the sale of land, and not as a mere agreement to pay a commission to an agent or broker for selling land.    The agreement gives to plaintiffs, for a limited time, the exclusive right to find a buyer for the farm who will pay at least $6,400 for it to the owner; the expressed inducement to plaintiffs to enter upon the work of finding a buyer being the right to retain for their services any sum greater than $6,400 which they can induce the purchaser to pay.    Upon the part of the plaintiffs the agreement would be performed when they produced a person able and willing to pay $6,400 or more for the place.    Upon the part of the owner, the defendant, the contract would be performed if, when a purchaser was produced by the plaintiffs and $6,400 was paid or tendered him, he conveyed the farm with good title.    The intending purchaser could not compel the owner of the farm to convey it to him, or to the plaintiffs.    Plaintiffs do not occupy the position of principals to a contract for the purchase and sale of lands.    They did not agree with defendant to buy his farm, and he did not agree to sell it to them.    Language used in the opinion in *Carr* v. *Leavitt*, 54 Mich. 540 (20 N. W. 576), is applicable here:

"This surely was not a contract 'for the sale of any lands, or any interest in lands,' within the meaning of the statute of frauds.  *  *  *  That statute contemplates a

transaction between parties contracting with each other as principals; and this was not such a transaction."

See, also, *Waterman, etc., Exchange* v. *Stephens*, 71 Mich. 104 (38 N. W. 685); *Hannan* v. *Prentis*, 124 Mich. 417 (83 N. W. 102); *Obenauer* v. *Solomon*, 151 Mich. 570 (115 N. W. 696).

The promise of defendant contained in the memorandum of agreement that he will "furnish a complete abstract of title and warranty deed to us, or to any one designated by us," would be quite as binding if made orally. It is no more than any owner of land who procures the services of an agent for its sale impliedly promises to do, if a suitable buyer is produced. The ultimate purpose of such a transaction is the sale and conveyance of the property. The contract must be construed with reference to all of its terms. The word "option" which is used therein relates manifestly to the exclusive right to sell the farm within a limited time. The clear purpose of the agreement is evident. It is not one for the purchase and sale of real estate, and we dismiss from consideration arguments based upon the idea that the contract was one which the statute makes invalid, unless it is written.

The essence of the agreement, whether the parol or the written agreement, was the procuring a purchaser for defendant's farm. Plaintiffs offered to prove that defendant had but one farm, that it was in Rush township, contained 80 acres, and was properly described as the west half of the northwest quarter of section 35, was shown to them and to intending purchasers by defendant, and was the land they undertook to sell. So much of the description of the land as is written "northwest half of northwest quarter" is an improbable description, indicating a probable mistake. It is not a description which government surveyors are permitted to use, and is one which could not be located by the usual monuments, minutes, and plats made by surveyors. The parol testimony offered did not tend to vary, contradict, or modify the

written agreement, but to make certain what appeared upon the face of it to be uncertain. What has been said disposes of all reasons and suggestions which are advanced in support of the action of the trial court.

The judgment is reversed, and a new trial granted.

BIRD, HOOKER, MOORE, and MCALVAY, JJ., concurred.