COLLIN *v.* KITTELBERGER.

1. TRIAL—APPEAL AND ERROR—EVIDENCE—WITNESSES—BOOKS AS EVIDENCE—CROSS-EXAMINATION.

Where plaintiff on direct examination used a diary to refresh his recollection and was interrogated on cross-examination as to several entries not relating to the case, a ruling of the court stopping the further examination was in the discretion of the trial judge and would only be reversed if the court abused its discretion.

2. SAME—EVIDENCE—HEARSAY—BROKERS—CONTRACTS.

Testimony, in a suit for broker's commissions, that in a conversation that related to the rental of a store which had been placed in plaintiff's hands to secure an occupier on commission, to the effect that he told the prospective tenant he could have the premises for a rental named, and that the latter was willing to pay the rental, was competent and not open to the objection that it was hearsay.

3. SAME—MISCONDUCT OF COUNSEL—PREJUDICIAL ERROR.

An order of the trial court, striking out improper remarks of one of the attorneys, and a direction, following the request of defendant's counsel to reprimand the attorney, to proceed with another question, was not reversible error or likely to be misunderstood by the jury.

4. SAME—CONTRACTS—CROSS-EXAMINATION.

A question asked of a party whether he knew that plaintiff thought he had a certain agreement was not improper cross-examination.

5. SAME—WITNESSES.

The objection that a subject had been already gone over was within the discretion of the court.

6. APPEAL AND ERROR—RECORD—ASSIGNMENTS.

Assignments of error should not be too general.

7. SAME—EXCEPTION.

On objection by defendant's counsel to a statement of plaintiff's counsel to the jury, not supported by the testimony, counsel not asking for or getting a ruling, the court will not review it.

8. BROKERS—FRAUDS, STATUTE OF—COMMISSIONS—CONTRACTS.

Act No. 238, Pub. Acts 1913, 3 Comp. Laws 1915, § 11981, requiring contracts for the commissions of a broker to be in writing, did not affect pre-existing agreements.

Error to Wayne; Mandell, J. Submitted June 23, 1916. (Docket No. 70.) Decided September 26, 1916.

Assumpsit by Frederick C. Collin against George Kittelberger for broker's commissions. Judgment for plaintiff. Defendant brings error. Affirmed.

*James H. Pound,* for appellant.

*Samuel R. Williams* (*Stevenson, Carpenter, Butzel & Backus,* of counsel), for appellee.

OSTRANDER, J. It is the theory of plaintiff's case that he was employed by defendant in January, 1913, to secure a tenant of defendant's building for a ten-year term beginning May 1, 1915, for $5,000 a year rent, net, for which service defendant was to pay him a commission of $800; that he found a man willing to make the lease and enter upon the term, to whom defendant made no objection, that defendant refused to lease, and later leased the premises to another, refusing to pay plaintiff his commission. This theory is supported by the testimony of plaintiff and that of the proposed lessee.

Defendant denied making the agreement, or any agreement, with plaintiff, and says that he did not contemplate leasing the premises, "except after giving his (defendant's) then tenant a first chance to rent at the price offered." The quotation is from appellant's brief. Defendant denied also that plaintiff ever informed him that he had secured a tenant for him upon the terms stated. The court submitted to the jury the question whether the agreement alleged was made and performed by plaintiff, and, if so, whether defendant refused to perform it. The jury returned a verdict for plaintiff, and judgment was entered on the verdict. A motion for a new trial was denied.

As no one claimed that defendant had performed, or was willing to perform, the contract set up by plaintiff, the only issues were the simple ones whether the contract was made, and, if made, was performed by plaintiff. It is the contention of defendant, appellant, that 41 errors, which may be fairly reduced to 30, were committed during or after the trial, and each assignment, the brief informs us, is relied upon.

The first assigned error discussed in the brief for appellant relates to a ruling which is complained about because curtailing unduly defendant's right of cross-examination. Plaintiff, upon direct examination, used a diary for the purpose of refreshing his recollection. Upon cross-examination he was interrogated with respect to various entries, not relating to this case, appearing therein. This was permitted for a time, when the court said:

"I think you have gone far enough to indicate the method of keeping the books, and that is all this testimony was competent for."

An exception was taken. What else there was in the diary, what particular item or entry it is claimed would have cast discredit upon it, what further purpose of counsel than that indicated by the ruling, does not appear. After stating in the brief that he was entitled to a lax rule and thorough examination, counsel says, and with this concludes argument upon this point:

"But I have had occasion to complain of this judge's idea of narrowing the issue before, and it does not do to repeat. He entirely misconceived what I was attempting to do. That is apt to occur from an endeavor to read another's thoughts, and I did not want to apprise the plaintiff in this case as to what I wanted, by arguing to the judge when he did not ask for it, or what I wanted."

Cross-examination for the purpose indicated is governed, and must be, by the discretion of the trial court, and in this case discretion does not appear to have been abused.

The second complaint discussed in the brief is of a ruling allowing an answer of a witness to stand. Interrogated about an existing lease, he had said it would expire May 15, 1915. The objection was that the lease was the best evidence. It does not appear that the

answer was incorrect, or claimed to be, or that defendant was or could have been prejudiced by the ruling. Commenting upon it in the brief, counsel for appellant says:

"And right here I want to call attention to Judge Mandell's method of doing business. The admission of this evidence is plainly against an elementary principle of the law of evidence. Still it is permitted, and this judge says, 'Note an exception.' And twice more he does the same upon the same page and four times upon page 23."

But the record discloses no other similar ruling and no other like objections. The other rulings referred to are upon another subject and relate to a conversation between plaintiff and his prospective tenant—the prospective tenant is testifying—and the testimony objected to was plainly competent as tending to support the contention and the testimony of plaintiff that he had found a tenant ready to accept the terms of defendant. The witness was testifying to the terms of the lease proposed to him by plaintiff and that he accepted them and was willing to make the lease. It is said in the brief upon this subject:

"Can there be anything clearer than that the talk of plaintiff and Wilson [the proposed tenant] not in defendant's presence was and is incompetent? Also the question:

" 'Q. Did he tell you the terms on which he could get the lease for you?' *   *   *

"This evidence, in and of itself, ruined our case for the defendant. It was something we could neither admit nor deny truthfully, because we knew nothing about it. The answer was: 'Yes, sir; he told me I could have the store. *   *   * I was willing to take a lease of that store, and so informed Mr. Collin.' *   *   *

" 'Q. Did you so inform Mr. Collin?

" 'A. Yes, sir; I told Mr. Collin that I was willing.

" 'Q. On what terms did Mr. Collin say he could get a lease?

" 'A. A ten-year lease, $5,000 a year net.' "

If this is not an orderly and proper way to prove that plaintiff had, pursuant to his alleged contract, found a tenant willing to take a lease upon defendant's terms, no other way is suggested by counsel. The brief next complains of a ruling, or suggestion, made by the court when counsel for defendant was examining his client. Referring to plaintiff and to the times he had seen him and what had been said between them, counsel asked:

"*Q.* Was there any other talk, besides what you have given us now, that you had between you and this man in September. Have you told us all in regard to the renting of the property? That is the only business you had in hand between you. What was the September matter about?

"*A.* About some other tenant that he brought up to me for the same location, but nothing came of it.

"*Q.* Who was the party?

"*The Court:* That is immaterial, unless the same party now spoken of.

"*A.* No, sir. (Exception for defendant.)

"*Q.* Was it the same man?

"*A.* No, sir.

"*Q.* Did anything come of it? Did you enter into any bargain with the man he brought up?

"*A.* No, sir; I did not.

"*Q.* When after that was it that you saw him again?

"*A.* Along in December, just before the holidays.

"*Q.* When afterward did you see Mr. Collin next?

"*A.* In the same office. I called on his office there. I was there in January.

"*Q.* So from the first interview that you have given us, in December, you had no more talks with him until January; is that right?

"*A.* No, sir."

At considerable length thereafter the witness was interrogated upon the whole subject of his conversations with plaintiff. Counsel did not answer the court's suggestion that the answer to the particular question would be immaterial. It is not pointed out that, if the

witness had given the name of the party referred to, it would have benefited defendant. There is no appearance in the record or by explanation of any prejudice of defendant's rights. Counsel did not cease to pursue the subject, but says in the brief:

"How the defendant came to meet Collin appears from Kittelberger's testimony on record, page 29, lower half. The acquaintanceship of Kittelberger consisted of talks in relation to this property, and the one to some extent covering the other. I was entitled to both. But the court, without objection, rules the question out, tending to explain it. Assignment 9 covers it. I submit this error is well assigned, and should reverse this case. It would bear upon the range of price, if no other thing. This interference of the judge, unsolicited, was very irksome, and looked very prejudicial to the jury, who, as onlookers, would wonder at it, without suggesting who the judge was prejudiced toward, whether attorney or client."

Upon the cross-examination of defendant, there was a reprehensible and altogether uncalled for statement made by plaintiff's attorney, which the court immediately ordered stricken from the record. Defendant's counsel asked that plaintiff's counsel "be reprimanded for making such a statement." The reply of the court was, "You may proceed with another question," and the examination proceeded. There follows in the printed record during the progress of the cross-examination of defendant several recitals, of which the following is an example:

"Q. You knew that Mr. Collin thought at least he had an agreement with you when you received the letter of January 28th? (Objected to.  *  *  * Struck out by order of court. Words stricken out are 'as incompetent.')

"The Court: Answer the question.  *  *  * (Struck out by order of court. Words stricken out are: 'Note an exception.')"

Of these recitals counsel for defendant says in the brief:

"Here comes the first of the conduct of the stenographer individually, which I complain of and severely criticise, to explain.   The stenographer inserts, 'Struck out by crder of the court.'   I am probably voicing my objection at the same time.

"My objections were probably shut out from the stenographer having in his anxiety not to drop a word of what the court said.   That is the only excuse I can see for his actions, except incompetency.   But I didn't know it until I saw the transcript, and I protest, but it does me no good, nor my client either.

"Why courts should try to evade responsibility for their ruling, when they are immune from liability, I cannot tell, but some do, and they have, since the Supreme Court of Massachusetts sought to deprive one Burton of an appeal which it took all the British ministers, and the Secretary of State, Thomas Jefferson's, political influence, as well as Edmund Randolph, and President Washington, to get a review thereof by the Supreme Court of the United States.   See volume 3 of Jefferson's Correspondence, letter to Mr. Hammond, British minister.

"Assignments 10 and 11 I call attention to.   The judge gets indignant, and forgets to put in an exception after his adverse ruling.   I insist that both the assignments of error are good.   Not an exception, not a word of caution to the jury which the judge omitted or the stenographer in error neglected to take.   But, God be thanked, the law gives us the exception, now, just the same, through the judicature act, now in force.

"I will not discuss this matter any further, because it is a subject I cannot express my opinion upon for reasons patent to any one, except the counsel opposed, and inasmuch as he objected to the insertion, and the lower court agreed with him, I do not expect either one of them to agree with me on this subject.   But I do expect this court to, and will be much disappointed if it don't."

This is the entire of the argument upon this point. Assignments of error 10 and 11 are:

"(10) In allowing and permitting the insulting

question to be asked defendant without rebuke, although asked,

" 'Q. I am not asking about that letter. You must have rehearsed that for some time.'

"This included 11, with Mr. Pound's request:

" '*Mr. Pound:* I ask that the counsel be reprimanded for making such a statement.' "

In the brief for appellee an explanation is given of the apocryphal appearance of the record I have referred to. It is said that the words were stricken out by the court when the bill of exceptions was settled, for the reason that they were not in the stenographer's notes, and had been inserted in the bill by counsel for defendant in accordance with his recollection of what objections were actually made and what exceptions were actually taken.

So far as the reprehensible statement of counsel is concerned, the rebuke from the court was immediate. To immediately order that a question and statement of counsel be stricken from the record is, it would seem, a rebuke not likely to be misunderstood by counsel or the jury. The questions objected to and about the objections to which the stenographer's notes are regarded as faulty do not appear to be improper questions to be asked on cross-examination. In any event, the record is here, and obviously cannot be disregarded by this court upon this hearing.

The thirteenth assignment of error is based upon an objection that the subject had been gone over, an objection not recognized by the court, to whose discretion it was addressed. The twenty-first assignment of error is based upon an exception to a ruling excluding an answer to a question asked by counsel for defendant as follows:

"Q. Then you did not tell the truth, when you were on the stand before, that you only had one written proposition from Mr. Wilson?"

The argument made in support of the assignment is, "I submit this was error." Why it was error, and especially why this court should reverse the judgment on account of it, is not stated.

In argument to the jury, counsel for plaintiff made a statement of fact not supported by the record. Counsel for defendant excepted, but asked for and got no ruling from the court. It seems unnecessary to cite the numerous decisions holding that the point is not before us.

Defendant presented 11 requests to charge. Some of them were given, in substance; some others ask for a construction of testimony and a virtual finding of fact. The one most relied upon in the brief asks for a peremptory instruction favorable to defendant, and is based upon four assigned reasons, which are:

"*First*. Because at the time of the trial of this case no contract for a commission upon the sale of lands could be maintained, unless it was in writing, which this one sued·upon in this case is not claimed to be.

"*Second*. Because the contract was in reference to a ten-year·lease at $5,000, which contract never became enforceable by a tender of a written lease, which was necessary to the commencement of this suit. —— v. *Wilkinson*, —— Mich. ——.

"*Third*. It was for the entering into a contract for a claimed leasing for a period of upwards of a year, which, by the statute of frauds, is in force in this State. It was a contract not operative in this case, because it was not in writing.

"*Fourth*. Because the suit is based upon the conveyance of an alleged interest in lands, to wit, a ten-year lease involving an outlay of $50,000, which was inefficacious, for the reason that it was not in writing."

The contract for commission alleged by plaintiff was made before Act No. 238, Pub. Acts 1913 (3 Comp. Laws 1915, § 11981), was passed, and the act did not affect the validity of a contract, existing when it took effect. *Third National Bank* v. *Steel*, 129 Mich. 434

(88 N. W. 1050, 64 L. R. A. 119). If the alleged contract was made, plaintiff performed it when he found a prospective tenant ready, willing, and able to take the lease upon defendant's terms, and it is plaintiff's testimony that the defendant announced satisfaction with the tenant proposed. See, also, *Brittson* v. *Smith*, 165 Mich. 222 (130 N. W. 599), and cases cited therein upon the subject of the contract for commission being within the statute of frauds.

None of defendant's requests which were altogether refused should have been given. The case was clearly one for a jury, and, while the charge given is criticized as being in some respects less explicit than it should have been and as favorable to plaintiff, it fairly left to the jury the theories of the parties and the substantial and controlling issues of fact to be decided. No request was made by counsel for defendant to amplify or make more explicit any issue submitted or to give any definitions or explanations. To the time that the verdict was returned, I find no reversible error made out, and the verdict was not so clearly against the weight of evidence that this court may interfere with the ruling which refused a new trial.

The judgment is affirmed, with costs to appellee.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.