[Civ. No. 2543.  Third Appellate District.—April 21, 1923.]

## HARRY J. GRAY, Respondent, v. P. L. YARBROUGH, Appellant.

[1] CONTRACTS—AGREEMENT TO SELL LAND—CONSTRUCTION—PRINCIPAL AND AGENT.—A written contract between a land owner and a person who described himself therein "as agent" by the terms of which the latter agreed "to undertake the sale" of the land and to "so continue his efforts to sell . . . until same has been disposed of to the satisfaction of both parties hereto, and . . . said agent shall be entitled to retain all over and above the said net prices herein named as his fee for negotiating said sale," created the relationship of principal and agent and not that of vendor and purchaser with an option.

[2] ID.—NAME GIVEN TO RELATIONSHIP BY PARTIES—EFFECT OF.—While the relation between the parties is to be determined from the terms of the contract rather than the name they have given that relation, some weight must be given to their designation thereof.

[3] ID.—FRAUD OF AGENT—INDUCEMENT TO ACCEPT LESS CASH PAYMENT—RIGHT OF PRINCIPAL.—Where an agent to sell land was obligated to use his best efforts to obtain for his principal an initial payment of "not less than one thousand dollars cash net to owner," and by false and fraudulent representations induced the owner to make the sale on a cash payment of only two hundred dollars, such fraud was actionable, notwithstanding the agent by the terms of the contract was entitled to any excess received above the fixed price as his compensation.

[4] AGENCY—FRAUD IN SALE OF LAND—ACTION BY OWNER—DISCOVERY OF FRAUD—STATUTE OF LIMITATIONS.—An action by a principal against an agent for fraud in making a sale of land is barred by the statute of limitations where commenced more than three years after the transaction induced by the fraud, and no showing is made as to when the fraud was discovered.

[5] ID.—DISCOVERY OF FRAUD—BURDEN OF PROOF.—In an action by an owner against an agent for fraud in making a sale of land, the burden is on the plaintiff to show that he first discovered the fraud within three years prior to the commencement of the action.

[6] PLEADING—FRAUD—DISCOVERY.—Where an action for relief on the ground of fraud is brought after the expiration of the statutory period of three years, the complaint must show when the fraud was discovered, why it was not discovered sooner, and the circumstances under which it was discovered.

APPEAL from a judgment of the Superior Court of Sacramento County. George H. Thompson, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

John R. Connelly and Evan J. Hughes for Appellant.

Charles A. Bliss for Respondent.

FINCH, P. J.—The controversy between the parties arose out of the following contract, executed on the day it bears date:

"Sacramento, Cal. Aug. 27, 1917.

"It is hereby agreed this day by and between Harry J. Gray, owner of two quarter sections of land near Lincoln, California and P. L. Yarbrough, agent, that in consideration of the sum of $300.00 cash in hand paid by said Yarbrough to said Gray, the receipt whereof is hereby acknowledged, that said Gray will have assigned and deliver to said Yarbrough one certain promissory note given by said Yarbrough to Harry T. Fuller.

"And furthermore it is agreed by and between the parties hereto that said agent shall undertake the sale of the Westerly quarter section of said land at a net price to owner of $3,200, and of the Easterly quarter section of land referred to at a net price to owner of $5,000, and shall so continue his efforts to sell either or both of said quarter sections until same has been disposed of to the satisfaction of both parties hereto and that on the sale of either or both quarter sections said agent shall be entitled to retain all over and above the said net prices herein named as his fee for negotiating said sale.

"It is further agreed by said agent that on the sale of either or both quarter sections aforenamed that the said agent will deduct from his fee thus earned, in excess of above-mentioned net price to owner, the amount or sum of three hundred eighteen and 20/100 dollars ($318.20), being the amount of said note, principal and interest discounted to said agent, and that said discount shall be paid to said owner at the time of said sale of land.

"Terms of sale on said land to be not less than $1,000.00 cash net to owner on the Westerly quarter section, and not less than $1,500.00 cash net to owner on the Easterly quarter section and no wood to be removed from land without the written consent of present owner; balance to be paid on or before 5 years with equal annual installments of principal, and six per cent interest on deferred payments.

"HARRY J. GRAY,
"Owners.

"P. L. YARBROUGH,
"Agent."

The terms of the contract were carried out in a manner satisfactory to the parties thereto, excepting the sale of the parcel of land listed at the price of $3,200. Yarbrough was a real estate agent in Sacramento. One Lamy was the owner of 320 acres of land in North Dakota and an equity in certain property in Alhambra, but it appears that such equity proved to be of no value. F. W. Herbert and C. D. Ackerman resided in Los Angeles. After the execution of the contract the defendant, through Herbert and Ackerman, entered into an agreement with Lamy to exchange plaintiff's quarter-section of land, to be subject to a mortgage for $3,000, for Lamy's North Dakota and Alhambra properties. In order to carry the deal through, defendant, Herbert, and Ackerman agreed among themselves that Herbert would take title to plaintiff's land and give the latter a promissory note for $3,000, secured by a mortgage on the land, they three to have an interest in the note to the extent of $800. Herbert was then to convey the land to Lamy, subject to the mortgage, and take title to the North Dakota and Alhambra properties and hold the same for the benefit of the three in equal shares. They three further agreed either to advance the $1,000 necessary to make the cash payment to plaintiff, as provided in the contract, or to secure the same by a mortgage to be executed by Herbert on the North Dakota land. The court found, on conflicting evidence, that after the foregoing understanding had been reached, the defendant informed plaintiff that a sale could be made to Herbert for $4,000, $1,000 cash and the said note and mortgage for $3,000, in which defendant was to have an interest of $800. Plaintiff agreed to the proposition and defendant so informed Herbert. Herbert then wrote

defendant to have plaintiff execute a deed and forward the same to a bank in Hollywood with instructions to deliver it to Herbert on receipt of $1,000 and his promissory note and mortgage as agreed upon. Instead of doing this the defendant falsely and fraudulently represented to plaintiff that only $200 could be obtained as a cash payment and proposed that plaintiff accept that sum and Herbert's note and mortgage for $3,000 in full payment for the land, the defendant to have no interest in the note. Believing defendant's representations and relying thereon, plaintiff agreed to the proposition and conveyed the land as proposed. Upon receipt of plaintiff's deed, Herbert conveyed the land, subject to the mortgage, to Lamy and received in exchange therefor Lamy's deed to the North Dakota and Alhambra properties. Defendant denied having made such false representations and testified that the change from a cash payment of $1,000 to one of $200 was made to satisfy plaintiff's wishes, with full knowledge on his part of all the facts, because the plaintiff preferred to have the entire interest in the mortgage. Defendant's testimony in this connection is somewhat discredited by a statement appearing in his letter to Herbert, as follows: "I have been so fortunate as to persuade the owner to accept the $3,000 mortgage and $200 in cash in full payment for the land, which obviates the necessity of taking an interest in the mortgage, and of putting 800 in the deal." In any event, the court's finding on the conflicting evidence is conclusive.

No part of the mortgage debt, either principal or interest, was ever paid, and plaintiff foreclosed the same. No other bidder appearing at the foreclosure sale, the plaintiff bid in the land for the amount of the note, interest, costs, and taxes.

Plaintiff's deed was delivered to Herbert October 20, 1917. Herbert sold the North Dakota land on or about the 1st of May, 1918, for the net sum of $4,720.11. In a suit brought by defendant against Herbert, the former was given judgment on May 2, 1921, for $1,573.37 on account of his one-third interest in the net proceeds of such sale. This action was commenced September 1, 1921. The plaintiff was given judgment for $1,573.37, with interest thereon from October 20, 1917. From this judgment the defendant Yarbrough has appealed.

[1] Appellant contends that the contract of August 27, 1917, "created the relationship of vendor and purchaser with an option and not that of principal and agent between Gray and Yarbrough." In support of this contention he cites *Robinson* v. *Easton, Eldridge & Co.*, 93 Cal. 80 [27 Am. St. Rep. 167, 28 Pac. 796], *Synnott* v. *Shaughnessy*, 2 Idaho, 122 [7 Pac. 82] and *Hutton* v. *Sherrard*, 183 Mich. 356 [L. R. A. 1915E, 976, 150 N. W. 135]. The contracts involved in those cases, while materially different from that here under consideration, authorized sales at fixed prices, the persons effecting the sales to retain as commissions all that was received above such prices. In the first case it is said: "The relation of the defendant to the plaintiffs was not that of a mere agent. . . . The relation thus created between them was rather that of a vendor and purchaser under a contract of sale than one of principal and agent, and a sale by the defendant thereunder was in the capacity of a vendor upon its own account, and not for the account of the plaintiffs." As indicated in the opinion, however, this holding was not necessary to the decision and it may fairly be said that the decision was based upon the other grounds stated by the court. In a note following the report of the case in 27 Am. St. Rep. 171, the author expresses disapproval of the statement quoted and the same is expressly disapproved in *Burnett* v. *Potts*, 236 Ill. 501 [86 N. E. 259]. In *Tate* v. *Aiken*, 5 Cal. App. 505 [90 Pac. 836], involving a somewhat similar contract, appellants cited *Robinson* v. *Easton, Eldridge & Co.*, in support of their contention that such contract was one of option rather than agency. The appellate court held that the contract created the relation of principal and agent and the supreme court denied appellant's petition for a hearing. The Robinson case is cited in *Smith* v. *Blodget*, 187 Cal. 235, 240 [201 Pac. 584, 586], where it is said: "Whether an agreement permitting a person 'to sell' land on certain terms creates the relation of principal and agent or that of vendor and purchaser under a contract of sale depends upon the intention of the parties." Language of similar import to that used in the Robinson case is found in *Synnott* v. *Shaughnessy, supra,* but there also such holding was not necessary to the conclusion reached. *Hutton* v. *Sherrard, supra,* does not hold that the relation created by the con-

tract involved therein was not that of principal and agent, but that there was no such conflict between the interests of the principal and agent as would prevent the latter from selling the property to himself at the price and on the terms fixed by the contract. The great weight of authority in other jurisdictions is to the effect that an owner's agreement, authorizing another to make a sale and retain all of the proceeds above a fixed price, creates the relation of principal and agent. (*Burnett* v. *Potts, supra; Mulvane* v. *O'Brien,* 58 Kan. 463 [49 Pac. 607]; *Chesbrough* v. *Vizard Inv. Co.,* 156 Ky. 149 [160 S. W. 725]; *Brittson* v. *Smith,* 165 Mich. 222 [130 N. W. 599]; *Chezum* v. *Kreighbaum,* 4 Wash. 680 [30 Pac. 1098, 32 Pac. 109]; *Shepard* v. *Pabst,* 149 Wis. 35 [135 N. W. 158].)

The contract in this case was drafted by the defendant. Its terms were essentially different from those in the Robinson contract. The defendant agreed, as agent, to "undertake the sale" of the land and to "so continue his efforts to sell . . . until same has been disposed of to the satisfaction of both parties hereto, and . . . said agent shall be entitled to retain all over and above the said net prices herein named as his fee for *negotiating* said sale." In the opening paragraph he described himself as "agent" and five times thereafter refers to himself as "agent" and the word "agent" follows his signature to the contract. The instrument is not an option but a binding contract by which the defendant obligated himself, not to purchase, but to use his best efforts to sell or negotiate a sale of the land. [2] While the relation between the parties is to be determined from the terms of the contract rather than the name they have given that relation, some weight must be given to their designation thereof. (*Title Ins. & Trust Co.* v. *Grider,* 152 Cal. 746 [94 Pac. 601].) To hold, under all the circumstances of this case, that the defendant was not the agent of the plaintiff would be to trifle with the rights of the parties in disregard of their manifest intention as expressed in the contract between them.

[3] If the sale had been made in accordance with the terms of the contract of agency, any false representations as to what defendant was to receive by reason of the sale would have been immaterial and not actionable fraud, because plaintiff had no interest in any excess received above

the fixed price, and defendant was not plaintiff's agent for the purpose of obtaining such excess but was acting for himself in that regard and in his own interest, the only restriction being that he must not violate his duty to plaintiff in his efforts to obtain or increase his own compensation. The defendant would have had the right, under the express terms of the contract, to such excess, without the consent and against the objection of plaintiff. The plaintiff knew that the defendant and his associates were to receive property of some character in exchange for the former's land, and the nature, location, or value of such property was not material, nor did the want of knowledge thereof in any manner influence plaintiff's conduct. But defendant was obligated to use his best efforts to obtain for his principal an initial payment of "not less than $1,000 cash net to owner." If he willfully failed to discharge this obligation and induced the plaintiff, by false and fraudulent representations, to make the sale on a cash payment of only $200, such fraud is actionable. An agent may not "do any act which a trustee is forbidden to do." (Civ. Code, sec. 2322; *Calmon* v. *Sarraille,* 142 Cal. 638 [76 Pac. 486]; *Smith* v. *Elderton,* 16 Cal. App. 424 [117 Pac. 563].) "In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." (Civ. Code, sec. 2228.) "A trustee may not use or deal with the trust property for his own profit, or for any other purpose unconnected with the trust, in any manner." (Civ. Code, sec. 2229.) "Every violation of the provisions of the preceding sections of this article is a fraud against the beneficiary of a trust." (Civ. Code, sec. 2234.) "A trustee who uses or disposes of the trust property, contrary to section two thousand two hundred and twenty-nine, may, at the option of the beneficiary, be required to account for all profits so made, or to pay the value of its use, and, if he has disposed thereof, to replace it, with its fruits, or to account for its proceeds with interest." (Civ. Code, sec. 2237.) Under the foregoing sections of the Civil Code, it seems clear that plaintiff was entitled to judgment for the profits made by defendant through the sale of plaintiff's property.

The judgment is for $1,573.37, defendant's share of the net proceeds of the North Dakota land, with interest thereon from the twentieth day of October, 1917, the date of the sale of plaintiff's land. Since plaintiff is suing for the profits made by the defendant, and it cannot be said that defendant received such profits until May 1, 1918, when they came into the hands of his trustee, Herbert, interest should be computed from the latter date. It may be that the North Dakota land increased in value between October 20, 1917, and May 1, 1918, and it would not be equitable to give the plaintiff the benefit of such increase in value and also interest from the earlier date. If the judgment were based on the value of such land on the twentieth day of October, 1917, rather than its selling price May 1, 1918, then interest might properly be computed from the former date. It is to be presumed that the judgment rendered in the suit of *Yarbrough* v. *Herbert* awarded the former interest from May 1, 1918, and, therefore, in allowing the plaintiff interest from the same date, the defendant will be required to pay plaintiff the exact amount which he has recovered from Herbert.

[4] Appellant contends that the court erred in finding that the plaintiff's cause of action was not barred by the statute of limitations, which the defendant set up as a separate defense. This contention must be sustained. The only testimony introduced to support such finding is that of plaintiff to the effect that he did not discover the fact that defendant had received an interest in the North Dakota land until the latter part of the year 1919. But defendant's fraud did not consist in the receipt of that property but in the false and fraudulent representations which induced the plaintiff to agree to the terms of the sale of his land. There is no evidence as to when plaintiff discovered such fraud, except that he had no knowledge thereof prior to his conveyance to Herbert. "An action for relief on the ground of fraud" must be commenced within three years after "the discovery, by the aggrieved party, of the facts constituting the fraud." (Code Civ. Proc., sec. 338.) This action was commenced September 1, 1921, more than three years after the transaction induced by the fraud. [5] The burden was on plaintiff to show that he first discovered the fraud within three years prior to the commence-

ment of the action. (*Prewett* v. *Dyer*, 107 Cal. 154 [40 Pac. 105].) This he has failed to do. The complaint was defective. **[6]** "Where an action for relief on the ground of fraud is brought after the expiration of the statutory period of three years, the complaint must show (1) when the fraud was discovered, which, of course, must be within the three-year period; (2) why it was not discovered sooner, and (3) the circumstances under which it was discovered." (*Victor Oil Co.* v. *Drum*, 184 Cal. 226, 241 [193 Pac. 243, 249].) While it may be argued that the findings cure the defect in the complaint, such result cannot follow where there is no evidence to support the findings.

Some contention is made to the effect that a double judgment was rendered, and the judgment is somewhat ambiguous in this regard, but the error will doubtless not be repeated on the retrial of the case.

The judgment is reversed, with directions to the trial court to grant the plaintiff a reasonable time within which to amend his complaint.

Burnett, J., and Hart, J., concurred.