REID *v.* BRADSTREET CO.

1. MASTER AND SERVANT—WRITTEN CONTRACT OF EMPLOYMENT— MODIFICATION BY PAROL AGREEMENT.
    Finding of court below that written contract of employment was changed by subsequent parol agreement, *held*, sustained by preponderance of evidence.

As to the effect of the statute of frauds upon the right to modify, by subsequent parol agreement, a written contract required by the statute to be in writing, see L. R. A. 1917B, 144.

2. CONTRACTS—WRITTEN CONTRACT MAY BE MODIFIED BY SUBSEQUENT PAROL AGREEMENT—EVIDENCE.

> Written contract may be varied by subsequent parol agreement unless forbidden by statute of frauds, although parties stipulate therein that it is not to be changed except in writing.

Appeal from Wayne; Moll (Lester S.), J. Submitted October 9, 1931. (Docket No. 69, Calendar No. 35,964.) Decided December 8, 1931.

Bill by George F. W. Reid against the Bradstreet Company, a Connecticut corporation, to restrain an action at law and for an accounting. Decree for plaintiff. Defendant appeals. Affirmed.

*Robert M. Brownson* and *Kenneth Murray,* for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant.

McDONALD, J. The defendant, Bradstreet Company, began suit against plaintiff, Reid, in the court of common pleas of the city of Detroit on an alleged indebtedness of $469.64. Claiming that he had a set-off which could only be determined by an accounting in equity, Mr. Reid filed this bill for that purpose, and obtained an injunction restraining further prosecution of the action at law. On the hearing, the trial court decided that the defendant was indebted to Mr. Reid in the sum of $3,250, and entered a decree accordingly. The defendant has appealed.

Prior to his resignation in March, 1929, Mr. Reid had been employed by the defendant in various capacities for a continuous period of 34 years. On May 1, 1919, he was given charge of its Detroit office as superintendent. On June 23, 1920, they entered into a written contract of employment in which his

salary was fixed at $350 per month and one-third of the profits of the Detroit office. He was also allowed a drawing account of $150 a month, which subsequently was increased to a much larger amount. This contract, except as changed by an alleged oral agreement in regard to compensation, continued in force until Mr. Reid's resignation in 1929. Shortly, subsequent to the contract of 1920, his duties were enlarged. In addition to his work as superintendent, he was made "division manager" of the Michigan division of the Bradstreet service in territory outside of the city of Detroit. There was no written agreement covering this employment. The plaintiff says his compensation for that service was adjusted by mutual consent at the close of each fiscal year. The defendant says he was compensated by the allowance of a bonus, the amount of which varied, depending on the profits of the business. At the close of the fiscal year of May, 1927, the defendant sent Reid a statement showing his compensation for that year to be $10,355.52. Soon thereafter, when he made his annual visit to the defendant's home office in New York, he protested that the compensation was insufficient. He discussed the matter with Mr. Clark, president of the Bradstreet Company, and it is his claim that an oral agreement was then made by which his future compensation was to be not less than $13,500 per year. The controversy over this agreement, which is strenuously denied by the defendant, gave rise to this suit.

The main issue is one of fact. The trial judge determined it in favor of the plaintiff. For the following reasons we think he was right: It is admitted by Mr. Clark that at the meeting in the New York office, at which time Mr. Reid claims the oral agreement was made, the matter of his future com-

pensation was thoroughly discussed. Reid insisted that if he was to continue in the company's service it must be at an increased compensation. Mr. Clark called in his auditor, who figured over the compensation for the preceding five years, which showed a yearly average of $13,500. Thereupon Mr. Clark directed the auditor to give plaintiff a check for $3,144.48 to bring his compensation for the past year up to $13,500. Thus far there is no dispute in the testimony. The only conflict is as to the time the increased compensation was to continue. Mr. Clark says it was for the year 1927 only, while Mr. Reid claims it was to continue as long as he was employed. The record is clear that the main subject of the discussion was future compensation. Mr. Clark summed it up as follows:

"I simply told him if he was going to be paid $13,500, he would have to earn that amount, and he said he could."

Because of Mr. Reid's urgent insistence for greater compensation and Mr. Clark's desire to retain his services, it would seem unlikely that the matter of future earnings was left unsettled. Moreover, Reid's testimony as to the agreement then made is strongly corroborated by the fact that at the conclusion of the discussion he was given a check of $3,144.48 to bring his compensation for 1927 up to $13,500; that the settlement with him in the following year was made on the same basis; and that their relations continued friendly with no denial of the agreement until after his resignation in 1929. We think the trial court was right in holding the agreement established by a preponderance of the evidence.

But it is contended by the defendant that, in view of a provision in the original contract requiring any

subsequent change therein to be in writing, it was not competent to show the alleged supplemental agreement by parol; and that the court erred in receiving Mr. Reid's testimony on that question.

We cannot agree with this contention. It is well established that a written contract may be varied by a subsequent parol agreement unless forbidden by the statute of frauds; and that this rule obtains though the parties to the original contract stipulate therein that it is not to be changed except by agreement in writing.

In discussing the subject of varying written instruments by parol, Prof. Williston says:

"Nor does it make any difference that the original written contract provided that it should not subsequently be varied except by writing. This stipulation itself may be rescinded by parol and any oral variation of the writing which may be agreed upon and which is supported by sufficient consideration is by necessary implication a rescission to that extent." Williston, Contracts, § 1828.

The theory of the rule is that:

"Whenever two men contract, no limitation self-imposed can destroy their power to contract again." *Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380 (122 N. E. 378).

In *Westchester Fire Insurance Co.* v. *Earle*, 33 Mich. 143, this court said:

"And the case seems to settle down to the simple question whether a person who has agreed that he will only contract by writing in a certain way, precludes himself from making a parol bargain to change it. The answer is manifest. A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there

can be no more force in an agreement in writing not to agree by parol, than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it."

In the instant case, the original agreement was not required to be in writing. It was competent to change its provisions by subsequent parol agreement though by its terms such change is required to be in writing.

Having determined that the supplemental agreement was established by competent evidence, the trial court considered the accounting and correctly fixed the compensation due Mr. Reid at the sum of $3,250.

The decree is affirmed, with costs to the plaintiff.

Butzel, C. J., and Wiest, Clark, Potter, Sharpe, North, and Fead, JJ., concurred.