KELLY-STEHNEY & ASSOCIATES, INC v MacDONALD'S
INDUSTRIAL PRODUCTS, INC

Docket No. 238079. Submitted December 3, 2002, at Detroit. Decided January 3, 2003, at 9:00 A.M. Leave to appeal sought.

Kelly-Stehney & Associates, Inc., brought an action in the Oakland Circuit Court against MacDonald's Industrial Products, Inc., seeking damages based on commissions allegedly due under a manufacturer's representative agreement entered into by the parties. The agreement provided that all modifications had to be in writing. However, the defendant thereafter reduced the commissions called for in the agreement pursuant to an oral agreement between the defendant's president and one of the plaintiff's main shareholders. The court, Rae Lee Chabot, J., granted summary disposition in favor of the defendant on the bases that the oral agreement was not barred by the statute of frauds, the parties were bound by the oral agreement, and the plaintiff was equitably estopped from denying the oral agreement. The plaintiff appealed.

The Court of Appeals *held*:

1. The statute of frauds does not apply to the oral agreement because the plaintiff was equitably estopped from denying the validity of the agreement.

2. The plaintiff intentionally or negligently induced the defendant to believe that the plaintiff had assented to the oral agreement. The plaintiff's acceptance of the reduced commission checks, the plaintiff's silence and failure to timely object, and the plaintiff's act of continuing to work for the defendant while accepting the reduced commission checks support this finding.

3. The clause in the manufacturer's representative agreement regarding no oral modifications is wholly nugatory as a matter of law and is not material to whether the defendant justifiably relied on the plaintiff's oral representations and silence regarding the oral agreement. The clause does not render the oral agreement invalid. The defendant justifiably relied and acted on its belief that the plaintiff agreed to the oral agreement.

4. The defendant would be prejudiced if the plaintiff were allowed to deny the validity of the oral agreement.

Affirmed.

ESTOPPEL — EQUITABLE ESTOPPEL.

> Equitable estoppel, although not an independent cause of action, may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact; equitable estoppel may arise where a party, by representations, admissions, or silence, intentionally or negligently induces another party to believe facts and that party justifiably relies and acts on that belief and would be prejudiced if the first party is allowed to deny the existence of those facts.

*Colombo and Colombo* (by *Michael J. O'Shaughnessy*) for the plaintiff.

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by *David J. Gass* and *S. Grace Davis*), for the defendant.

Before: BANDSTRA, P.J., and ZAHRA and METER, JJ.

ZAHRA, J. Plaintiff appeals as of right from the trial court's order granting defendant's motion for summary disposition. We affirm.

### I. FACTUAL AND PROCEDURAL HISTORY

On February 23, 1994, the parties entered into a Manufacturer's Representative Agreement (MRA), which provided that plaintiff would work for defendant as an independent contractor selling products manufactured by defendant to other manufacturers in the automotive industry. The MRA provided that plaintiff would receive three percent commissions on new product sales of defendant's products unless otherwise agreed in writing. The MRA bound both parties for three years and automatically extended in one-year increments after the initial three years. The MRA further provided that all modifications had to be in writing.

After the parties entered into the MRA, defendant made an agreement with DaimlerChrysler Corporation in which defendant was scheduled, commencing in the summer of 1997, to produce a line of automobile window frames called the Daylight Opening (DLO). In early 1997, defendant's president, Robert MacDonald, orally proposed a three-year special arrangement regarding the DLO program to Edward Stehney, one of plaintiff's main shareholders (the oral DLO agreement). MacDonald proposed that defendant would extend the MRA, but would pay plaintiff DLO commissions on a reduced sliding scale as follows: three percent for model year (MY) 1998,[1] two percent for MY 1999, and 1.5 percent for MY 2000. Under this agreement, defendant would pay plaintiff commissions based on a fixed rate of $21.86 for each piece.[2] MacDonald testified that Stehney orally agreed to this arrangement. MacDonald attested that the only reason he agreed to extend the term of the MRA was because plaintiff agreed to continue working for reduced commissions under the oral DLO agreement.

In MYs 1998 through 2000, defendant paid plaintiff commissions based on $21.86 for each piece. Defendant paid plaintiff three percent commissions in MY 1998, two percent in MY 1999, and 1.5 percent in MY 2000. Defendant terminated the MRA on January 7, 2000. After this termination, plaintiff demanded that defendant pay plaintiff its commissions for MYs 1999

---

[1] A "model year" spanned from July through June of the next year.

[2] Apparently, instead of paying plaintiff commissions based on the varying prices of the products, defendant proposed paying the commissions at a fixed rate of $21.86 for each piece. Defendant apparently determined this amount by factoring in the material costs for each piece, labor costs, burden costs, and scrap costs of each operation used in making the pieces.

and 2000 at a rate of three percent. When defendant refused, plaintiff sued, requesting damages based on the commissions to which it was originally entitled under the MRA. The trial court granted defendant's motion for summary disposition, concluding that the oral DLO agreement was not barred by the statute of frauds and the parties were bound by this agreement. The trial court further concluded that plaintiff's claims were barred by equitable estoppel.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Defendant filed its motion for summary disposition pursuant to MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 163; 645 NW2d 643 (2002). A motion for summary disposition should be granted when, except in regard to the amount of damages, there is no genuine issue in regard to any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. MCR 2.116(C)(10), (G)(4); *Veenstra, supra* at 164. In deciding a motion brought under this subsection, the trial court must consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in a light most favorable to the nonmoving party. *Veenstra, supra* at 164. The moving party has the initial burden of supporting its position with documentary evidence, but once the moving party meets its burden, the burden shifts to the nonmoving party to establish that a genuine issue of disputed fact exists. *Quinto v Cross & Peters Co*, 451

Mich 358, 362; 547 NW2d 314 (1996). "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material facts exists." *Id.* The moving party is entitled to a judgment as a matter of law when the proffered evidence fails to establish a genuine issue regarding any material fact. *Veenstra, supra* at 164. The decision whether to grant a motion for summary disposition is a question of law that is reviewed de novo. *Id.* at 159.

### B. JUDICIALLY CREATED EXCEPTIONS TO THE STATUTE OF FRAUDS

Plaintiff argues that the oral DLO agreement is barred by the statute of frauds. "It is well established that a written contract may be varied by a subsequent parol agreement *unless forbidden by the statute of frauds*; and that this rule obtains though the parties to the original contract stipulate therein that it is not to be changed except by agreement in writing." *Reid v Bradstreet Co*, 256 Mich 282, 286; 239 NW 509 (1931) (emphasis added). Generally, where an original contract was required to be made in writing under the statute of frauds, any modification of the agreement should also be in writing. *Zurcher v Herveat*, 238 Mich App 267, 299-300; 605 NW2d 329 (1999). The statute of frauds provides, in pertinent part:

> In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by

the party to be charged with the agreement, contract, or promise:

(a) An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement. [MCL 566.132)(1)(a).]

Defendant does not dispute that the oral DLO agreement could not be fully performed within one year of making the agreement. However, defendant argues that the statute of frauds does not apply to the oral DLO agreement because: (1) the oral DLO agreement satisfied the writing requirement of the statute of frauds;[3] (2) plaintiff is equitably estopped from asserting the statute of frauds; (3) the parties fully performed the agreement; and (4) plaintiff ratified the agreement.

We reluctantly agree with defendant that the statute of frauds does not apply because plaintiff was equita-

---

[3] The Michigan statute of frauds does not require the entire contract to be in writing, but only requires a "note or memorandum of the agreement . . . ." See *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 367; 320 NW2d 836 (1982). In determining what constitutes a note or memorandum sufficient to satisfy the writing requirement of the statute of frauds, our Supreme Court has refused to adopt a rigid standard. *Id.* "Some note or memorandum having substantial probative value in establishing the contract must exist; but its sufficiency in attaining the purpose of the statute depends in each case upon the setting in which it is found." *Id.* at 368, quoting *Goslin v Goslin*, 369 Mich 372, 376; 120 NW2d 242 (1963) (internal quotation marks omitted). Only the essential terms of the contract must be reduced to writing. *Opdyke, supra* at 369. Defendant argues that the statute of frauds writing requirement was satisfied by the monthly commissions checks that were signed by plaintiff. In support of this argument, defendant cites *Adell Broadcasting Corp v Cablevision Industries*, 854 F Supp 1280 (ED Mich, 1994), in which the federal district court, in dicta, held that under Michigan law, an endorsed check was a sufficient writing to satisfy the statute of frauds. *Id.* at 1291. However, defendant does not cite any published Michigan cases indicating that the dicta in *Adell* is binding in this case. Given our conclusion that the equitable estoppel exception to the statute of frauds applies in this case, we need not decide whether the writing requirement of the statute of frauds was satisfied.

bly estopped from denying the validity of the agreement. We apply the equitable estoppel doctrine only because our Supreme Court has recognized that estoppel was "developed to avoid the arbitrary and unjust results required by an overly mechanistic application of the [statute of frauds]." *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 365; 320 NW2d 836 (1982).[4] We nonetheless question the wisdom of such judicially created exceptions to the statute of frauds as equitable estoppel, ratification, and part performance.[5] Rather than deferring to the Legislature to

---

[4] We question the continued viability of utilizing a judicially created doctrine like estoppel to circumvent the plain language of the statute of frauds. The Supreme Court's adoption of the estoppel exception to the statute of frauds in *Opdyke* appears to be based on the "absurd result" rule of statutory construction as described in *Salas v Clements*, 399 Mich 103, 109; 247 NW2d 889 (1976) ("[D]eparture from the literal construction of a statute is justified when such construction would produce an absurd and unjust result and would be clearly inconsistent with the purposes and policies of the act in question."). However, our Supreme Court has recently refused to apply the absurd result rule of statutory construction, describing it as " 'nothing but an invitation to judicial lawmaking.' " *People v McIntire*, 461 Mich 147, 156; 599 NW2d 102 (1999), quoting Scalia, A Matter of Interpretation: Federal Courts and the Law (New Jersey: Princeton University Press, 1997), p 21, while reproducing and adopting the partial dissenting opinion of Young, P.J., in *People v McIntire*, 232 Mich App 71, 122, n 2; 591 NW2d 231 (1998). Thus, the viability of the estoppel exception to the statute of frauds is questionable in light of the Supreme Court's recent unwillingness to apply the absurd result rule of statutory construction.

[5] Our Supreme Court has been inconsistent in its application of these judge-made exceptions to the statute of frauds. For example, in regard to ratification, our Supreme Court has held that "[c]ontracts conveying an interest in land made by an agent having no written authority are invalid under the statute of frauds unless ratified by the principal." *Forge v Smith*, 458 Mich 198, 208-209; 580 NW2d 876 (1998), citing *Detroit P & N R Co v Hartz*, 147 Mich 354, 364; 110 NW 1089 (1907). In *Forge, supra* at 209, n 27, the Court declined to address whether oral ratification is sufficient where the authorization itself must be in writing under the statute of frauds. However, in *Jefferson v Kern*, 219 Mich 294, 298; 189 NW 195 (1922), the Court held that a contract that is void under the statute of frauds cannot be ratified because it is a nullity and there is nothing to ratify. The Court has nonetheless approved of estoppel as a common-

address through the legislative amendment process any perceived inequity in the statute of frauds, Michigan courts have by judicial fiat created gaping holes in the statute of frauds that are inconsistent with the express language of the statute and the policy supporting it:

> Unlike a traditional common-law contract claim or defense, the statute of frauds is legislatively mandated. The Michigan Legislature has determined that, for those contracts specifically identified in the statute of frauds, it is important to provide certainty and to avoid controversy over the terms of alleged contracts. Thus, such contracts must be reduced to writing. As noted by Judge PETERSON in his dissenting opinion, in *Lovely* [*v Dierkes*, 132 Mich App 485, 493; 347 NW2d 752 (1984)], "[w]e start any discussion of the statute of frauds with the posit that its application may result in substantial injustice. Real and honest contracts will not be enforced because of the statute of frauds; honest [people] will lose the benefits of their bargains because they neglected to reduce them to writing." Given this premise, the role of the judiciary is to apply the statute of frauds as written, without second-guessing the wisdom of the Legislature. [*Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538, 548, n 4; 619 NW2d 66 (2000).]

Allowing judge-made doctrines such as estoppel to override and preclude the application of legislatively

---

law exception to the statute of frauds. *Opdyke, supra* at 365. In *Opdyke*, the Court also explained that "[t]he doctrine of 'part performance' satisfying the statute is as old as the statute itself . . . ." *Id.* The Court has approved of the part performance exception to the statute of frauds in cases involving land, *Guzorek v Williams*, 300 Mich 633, 638-639; 2 NW2d 796 (1942), but has declined to recognize that the part performance doctrine removes a contract from the statute of frauds provision concerning contracts not to be performed within one year. See *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 540-541; 473 NW2d 652 (1991) (RILEY, J.); *Ordon v Johnson*, 346 Mich 38, 46; 77 NW2d 377 (1956); *Whipple v Parker*, 29 Mich 369 (1874).

created laws such as the statute of frauds "is contrary to well-founded principles of statutory construction and is inconsistent with traditional notions of the separation of powers between the judicial and legislative branches of government." *Id.* at 548, n 4, citing Scalia, A Matter of Interpretation: Federal Courts and the Law (New Jersey: Princeton University Press, 1997), pp 14-29. Although we question the propriety of applying the equitable estoppel doctrine and other common-law exceptions to the statute of frauds, we will continue to do so until our Supreme Court states otherwise.

### C. PLAINTIFF IS EQUITABLY ESTOPPED FROM DENYING THE ORAL DLO AGREEMENT

The general principles regarding the doctrine of equitable estoppel are as follows:

> "Equitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact. Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." [*Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 527; 644 NW2d 765 (2002), quoting *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999).]

This Court should look at the totality of the factual circumstances, including the parties' representations, in determining whether the equitable estoppel doctrine bars a statute of frauds argument. *Lakeside Oakland, supra* at 529. "Estoppel questions should be

presented to the jury where factual issues exist regarding whether a party is estopped from raising the statute of frauds defense against a party who reasonably and justifiably relied on an oral agreement." *Id.* at 527.

### 1. PLAINTIFF NEGLIGENTLY OR INTENTIONALLY INDUCED DEFENDANT TO BELIEVE THAT PLAINTIFF HAD ACCEPTED THE TERMS OF THE ORAL DLO AGREEMENT

Applying the equitable estoppel defense to the facts of this case, we first conclude that, through Stehney's words and actions, plaintiff intentionally or negligently induced defendant to believe that it had assented to the oral DLO agreement. MacDonald testified that Stehney agreed to the oral DLO agreement, but there is no testimony from Stehney regarding whether he agreed to or rejected the oral DLO agreement. Additionally, Stehney testified that he knew that defendant was paying plaintiff commissions based on reduced rates and a fixed price of $21.86, but Stehney accepted them because he did not want defendant to terminate the contract. Stehney knew that defendant was paying defendant two percent commissions in MY 1999 and 1.5 percent commissions in MY 2000. On September 24, 1999, defendant sent plaintiff a letter reminding it of the commission rates under the DLO program. Plaintiff did not object to this letter. In MY 2000, plaintiff accepted defendant's payments of 1.5 percent commissions on DLO products. Stehney once asked MacDonald why the commissions were 1.5 percent rather than 1.75 percent.[6] When

---

[6] In MY 1998, defendant presented plaintiff with a proposed written version of the oral DLO agreement. This proposed written version provided that defendant would pay plaintiff 1.75 percent commissions for DLO prod-

MacDonald did not respond, plaintiff accepted the 1.5 percent commission rate.

Plaintiff continued to accept the commission checks despite knowing that they were based on commission rates lower than that expressed in the MRA. Plaintiff did not firmly object orally or in writing to the commission rates or base price until May 31, 2000, which was after defendant terminated the contract and more than three years after the oral DLO agreement was made. A party's failure to object to the terms of a modification of an agreement within a reasonable time is an indication that the parties agreed to the modification. See *Evans v F J Boutell Driveaway Co, Inc,* 48 Mich App 411, 421; 210 NW2d 489 (1973) ("Plaintiffs' silence from the time the modification agreement was entered into until their complaint seeking injunctive relief was filed (a period exceeding 11 months) provides further indication in support of defendant's theory that both parties modified the original contract clearly stating the bargained-for exchange."). Although plaintiff may have questioned the reduced commission rates and base price for the commissions before May 31, 2000, plaintiff accepted the reduced commissions when defendant refused to change the commission rates and base price.

Plaintiff argues that its acceptance of the base price and commission checks was not enough to establish that it assented to the oral DLO agreement. Stehney testified that he accepted the reduced commission checks only because defendant was going through a difficult financial time and he wanted to accommodate defendant. However, "[a] meeting of

---

ucts in MY 2000. However, no agent of plaintiff ever signed this proposed written agreement.

the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Marlo Beauty Supply, Inc v Farmers Ins Group of Cos*, 227 Mich App 309, 317; 575 NW2d 324 (1998). Similarly, under an estoppel analysis, Stehney's subjective state of mind is not relevant in determining whether plaintiff induced defendant into believing that it had assented to the oral DLO agreement. On June 22, 1999, Stehney wrote a letter to defendant stating, "Kelly-Stehney has been most accommodating and flexible in yielding to your requests for adjusting our commissions over the past several years on the DLO program." This evidence demonstrates that plaintiff accepted the reduced commission rates; it does not demonstrate that plaintiff expected to be reimbursed in the future. Stehney's testimony shows that plaintiff accepted the reduced rates and base price out of a fear that defendant would terminate the contract if plaintiff did not accept these reduced rates.

Plaintiff argues there is evidence showing that it did not induce defendant into believing that it had assented to the oral DLO agreement. First, plaintiff points to a letter written by Stehney before defendant proposed the oral DLO agreement. On October 25, 1995, Stehney sent a letter to defendant proposing a five-year extension of the MRA. Stehney proposed the five-year extension so that the MRA would extend through the life of the DLO program and plaintiff would receive commissions on the DLO sales. Stehney testified that defendant did not respond to his letter and did not sign the proposed extension. Plaintiff argues that this letter indicates its unwillingness to agree to a commission or base price reduction. We disagree. The letter and proposed written MRA amend-

ment, which were written more than one year before defendant proposed the terms of the oral DLO agreement, merely indicate that plaintiff wanted to extend the MRA—there is no indication that plaintiff would not agree to a reduction in commission rates or the base price in exchange for this extension.

Plaintiff also argues that its refusal to sign the written version of the oral DLO agreement proposed by defendant in MY 1998 shows its intent not to be bound by the terms of the oral DLO agreement. Plaintiff argues that, because the terms of the proposed written DLO agreement were more advantageous to plaintiff than the terms of the alleged oral agreement,[7] it would not be logical for plaintiff to refuse to sign the proposed written DLO agreement if it had agreed to the terms of the oral DLO agreement. We disagree. The proposed written draft of the oral DLO agreement was just that—a proposed draft. There is no evidence concerning why it was drafted, why it was sent to plaintiff, or why plaintiff did not sign it. Furthermore, the evidence shows that plaintiff continued to accept the lower commission rates after it refused to sign the proposed written DLO agreement and did not object to these rates or the base price of $21.86.

Next, plaintiff argues that there exists a question of fact regarding whether it induced defendant into believing that it had assented to the oral DLO agreement because Stehney objected to the $21.86 base price in MY 1998 after reviewing the monthly commission statements. Stehney testified that he objected to

---

[7] As discussed in note 3, the proposed written version of the oral DLO agreement provided that defendant would pay plaintiff 1.75 percent commissions in MY 2000, as opposed to the 1.5 percent commissions provided for in the oral DLO agreement.

the $21.86 base price, but MacDonald responded, "That's all you're going to get." Although Stehney may have initially objected to the price, he accepted it and cashed the commission checks. Through his actions, Stehney showed that plaintiff was willing to accept the reduced commission amounts reflected in the commission checks. There is no evidence that plaintiff did not agree to the terms of the oral DLO agreement in the first place and the evidence of plaintiff's later actions is not sufficient to show that it never manifested an intent to be bound by the oral DLO agreement.

We conclude that plaintiff's acceptance of the reduced commission checks, plaintiff's silence and failure to firmly object, and plaintiff's act of continuing to work for defendant while accepting the commission checks show that plaintiff intentionally or negligently induced defendant to believe that it had accepted the terms of the oral DLO agreement. Plaintiff did not object because it did not want to jeopardize its business relationship with defendant or risk defendant's termination of the contract. Instead, plaintiff waited until after the contract was terminated to object. In this way, plaintiff misled defendant into believing that it had accepted the terms of the oral DLO agreement.

## 2. AS A MATTER OF LAW, DEFENDANT JUSTIFIABLY RELIED UPON ITS BELIEF THAT PLAINTIFF ACCEPTED THE TERMS OF THE ORAL DLO AGREEMENT[8]

Plaintiff also argues that defendant's reliance on its belief that plaintiff agreed to the oral DLO agreement

---

[8] There is no dispute that defendant *acted* on its belief that plaintiff accepted the terms of the oral DLO agreement by paying plaintiff commis-

was not reasonable because the MRA provided that all modifications had to be in writing. In support of its argument, plaintiff points to the fact that defendant demonstrated its knowledge of the clause in the MRA regarding no oral modifications by attempting to get plaintiff to sign a written form of the oral DLO agreement. Additionally, plaintiff argues that this clause in the MRA renders the oral DLO agreement invalid. We disagree and conclude as a matter of law that the clause in the MRA regarding no oral modifications does not render the oral DLO agreement invalid and defendant justifiably relied and acted on its belief that plaintiff agreed to the oral DLO agreement. We presume that parties to a contract understand and have a knowledge of the law. *Hyatt v Grand Rapids Brewing Co*, 168 Mich 360, 363; 134 NW 22 (1912). In regard to contract clauses forbidding oral modifications, this Court has explained that "such language, although frequently seen, is wholly nugatory." *Zurich Ins Co v CCR & Co (On Rehearing)*, 226 Mich App 599, 601; 576 NW2d 392 (1997), citing *Reid, supra* at 286. Therefore, the existence of the clause regarding no oral modifications is not material to whether defendant justifiably relied on plaintiff's oral representations and silence regarding the oral DLO agreement.[9]

---

sions according to the reduced rates and base price set forth in the oral DLO agreement.

[9] We note that, in *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 689; 599 NW2d 546 (1999), this Court held that, in the context of a misrepresentation claim, it was unreasonable for the plaintiff to rely on oral statements that were expressly contradicted by the written contract, which contained an integration clause. The MRA is distinguishable from the contract in *Novak* in that the terms of the MRA do not contradict the terms of the oral DLO agreement. Instead, the terms of the oral DLO merely provide for different commission rates under an extension of the MRA, which

Plaintiff also points to several cases that stand for the proposition that, absent a showing of fraud or mutual mistake, one who signs a contract cannot seek to invalidate it on the basis that he did not read it or thought its terms were different. *Witt v Seabrook*, 210 Mich App 299, 303; 533 NW2d 22 (1995); *Sherman v DeMaria Bldg Co, Inc*, 203 Mich App 593, 599; 513 NW2d 187 (1994); *Stopczynski v Ford Motor Co*, 200 Mich App 190, 193; 503 NW2d 912 (1993); *Paterek v 6600 Ltd*, 186 Mich App 445, 450; 465 NW2d 342 (1990). Plaintiff argues that defendant is presumed to have read the clause in the MRA regarding no oral modifications and may not now say that it reasonably relied on plaintiff's oral representations regarding the oral DLO agreement. However, defendant does not seek to invalidate the contract because it was unaware of the clause. Rather, the clause is void by operation of law. *Zurich Ins Co, supra* at 601. Therefore, *Witt, Sherman, Stopczynski*, and *Paterek* are not applicable to the present case.

In sum, because the clause regarding no oral modifications is a nullity as a matter of law, there is no evidence to place in doubt the reasonableness of defendant's reliance on plaintiff's acceptance of the oral DLO agreement. Plaintiff did nothing to convey to defendant that it ought not rely on its belief that the oral DLO agreement constituted an extension of the MRA under which plaintiff was paid lower commissions than those payable under the original terms of the MRA.

---

was optional under the original contract. Additionally, the evidence in the present case shows that plaintiff agreed to the oral DLO agreement and accepted the reduced commission checks without any firm objection until defendant finally terminated the contract.

### 3. DEFENDANT WOULD BE PREJUDICED IF PLAINTIFF WERE PERMITTED TO DENY THE VALIDITY OF THE ORAL DLO AGREEMENT

Finally, we determine that there is no question of fact that defendant would be prejudiced if plaintiff were allowed to deny the validity of the oral DLO agreement. Plaintiff argues that defendant would not be prejudiced by paying the higher commission rates under the MRA because plaintiff was paid its commissions through a fixed fund already paid to defendant by DaimlerChrysler. Plaintiff's logic is flawed. Regardless of whether the higher commissions are paid directly by defendant or indirectly by Daimler-Chrysler, defendant would still be forced to pay higher commissions if plaintiff were allowed to deny the validity of the oral DLO agreement. Defendant's contractual relationship with DaimlerChrysler is not relevant to defendant's contractual relationship with plaintiff. Because defendant would have to pay the higher commissions under the original MRA if plaintiff were allowed to deny the validity of the oral DLO agreement, defendant would be prejudiced. Additionally, defendant would be prejudiced because, if plaintiff had timely objected to the terms of the oral DLO agreement or the commission payments, defendant could have cancelled the MRA and found another sales representative instead of extending the term of the MRA and paying plaintiff three percent commissions under the original MRA.

Looking at the totality of the factual circumstances, we conclude that under the current state of the law, there is no question that the equitable estoppel doc-

trine applies to this case and that the statute of frauds does not bar enforcement of the oral DLO agreement.[10]
   Affirmed.

---

[10] In light of our conclusion that plaintiff is estopped from denying the validity of the oral DLO agreement, we need not address plaintiff's remaining arguments.