Zahra, J. (dissenting).
 

 The issue in this case is straightforward. MCL 566.132(1)(e) plainly provides that an agreement, promise, or contract to pay a commission for or upon the sale of an interest in real estate promise is void unless that agreement, contract, or promise is in writing and signed by the party to be charged with the agreement, contract, or promise. Despite this legislative directive, this Court has sanctioned the enforcement of an unwritten promise to pay a commission for or upon the sale of an interest in real estate. Because the law clearly provides that this promise is void, it is not enforceable. Accordingly, I dissent. I would overrule this Court's decision in
 
 Opdyke Investment Co. v. Norris Grain Co.
 

 [9]
 
 and apply the plain language of MCL 566.132(1)(e).
 

 I. BASIC FACTS AND PROCEDURAL HISTORY
 

 Plaintiffs are real estate brokers who seek compensation for their efforts in procuring the sale of real property from defendant Howell Public Schools to defendant St. John Hospital. According to plaintiffs' complaint, Howell Public Schools offered for sale real property through a sign stating that the sale was "broker protected." The complaint alleges that this sign "explicitly promised [p]laintiffs that [Howell Public Schools] would honor the earned broker fee for delivering to [Howell Public Schools] a buyer." Plaintiffs allege that they relied on this promise
 by expending considerable effort to broker a sale of the property to St. John. According to the complaint, plaintiffs contacted an associate superintendent of Howell Public Schools and informed him they had a "client" interested in viewing their listed properties. Later, plaintiffs met with this associate superintendent at one of Howell Public Schools' properties, the Latson School Property, and toured the site. Afterwards, plaintiffs sent St. John a "Letter of Intent" to sign and return. St. John did not return the document. Plaintiffs also sent the associate superintendent a "Confidentiality, Commission & Broker Protection Agreement." This document was likewise not returned, apparently and according to plaintiffs' complaint, because plaintiffs sought an 8% commission for the sale. Plaintiffs allege in their complaint that "[u]pon information and belief, sometime in, or around, early April 2014, one of the Defendants caused Thomas A. Duke Company, a commercial real estate company, to fashion a purchase agreement for the sale of the Latson School Property from Howell [Public] Schools to St. John." Plaintiffs' complaint further alleges that defendants learned in late April 2014 of plaintiffs' efforts to broker a sale between them. Plaintiffs allege that "a few months later, on July 7, 2014, Howell [Public] Schools entered into a purchase agreement with St. John for the Latson School Property."
 

 In lieu of an answer, defendants filed a motion for summary disposition, arguing that plaintiffs' complaint must be dismissed under MCL 566.132, commonly known as the statute of frauds. The statute of frauds requires certain types of agreements to be in writing and signed by the party against whom it will be enforced. This expressly includes "[a]n agreement, promise, or contract to pay a commission for or upon the sale of an interest in real estate." MCL 566.132(1)(e). Plaintiffs countered that the statute of frauds did not apply because plaintiffs pleaded a theory of promissory estoppel, which is a judicially created exception to the statute of frauds. The circuit court granted defendants' motion and dismissed the case.
 
 [10]
 

 The Court of Appeals reversed, reluctantly holding that "[r]egardless of the wisdom of using a judicially created exception to a statute, we must apply it."
 
 [11]
 
 Relying entirely on this Court's decision in
 
 Opdyke
 
 , the panel stated that "[t]he Michigan Supreme Court created and has upheld the [promissory estoppel] exception" and acknowledged that it "is bound to follow decisions of our Supreme Court."
 
 [12]
 
 The panel urged this Court to grant leave to address the issue presented in this case, opining that "[t]he judicially created doctrine of promissory estoppel, as applied to the facts of this case, subsumes the statute of frauds and makes the statute of frauds irrelevant."
 
 [13]
 

 Howell Public Schools appealed in this Court. We ordered argument on the application and requested that the parties file supplemental briefs on the question whether promissory estoppel is an exception to the statute of frauds.
 

 II. ANALYSIS
 

 MCL 566.132(1) expressly provides in relevant part:
 

 In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
 

 * * *
 

 (e) An agreement, promise, or contract to pay a commission for or upon the sale of an interest in real estate.
 

 There is no dispute that the plain language of MCL 566.132 renders "void" Howell Public Schools' alleged "promise ... to pay a commission for or upon the sale of an interest in land" because there is no "writing" that is "signed with an authorized signature by" Howell Public Schools. In fact, plaintiffs admit that Howell Public Schools flat-out refused to sign their proposed agreement. The text of MCL 566.132 is clear and definite; unless there is a writing signed with an authorized signature by the party to be charged, the promise is void. The Legislature did not provide for any exceptions to this rule. Thus, the statute of frauds should apply in this case.
 

 Like the Court of Appeals panel in this case, I have previously been in a position to "reluctantly agree" that the statute of frauds can be circumvented through judicially created exceptions "[r]ather than deferring to the Legislature to address through the legislative amendment process any perceived inequity in the statute of frauds ...."
 
 [14]
 
 In doing so, "Michigan courts have by judicial fiat created gaping holes in the statute of frauds that are inconsistent with the express language of the statute and the policy supporting it[.]"
 
 [15]
 
 Now, as a Justice of the Michigan Supreme Court, I continue to repudiate any judicially created doctrine that has "developed to avoid the arbitrary and unjust results required by an overly mechanistic application of the [statute of frauds]."
 
 [16]
 
 It bears repeating that
 

 [a]llowing judge-made doctrines such as estoppel to override and preclude the application of legislatively created laws such as the statute of frauds "is contrary to well-founded principles of statutory construction and is inconsistent with traditional notions of the separation of powers between the judicial and legislative branches of government."
 
 [
 

 17
 

 ]
 

 The concurrence states that we ought not reverse
 
 Opdyke
 
 under principles of stare decisis. Indeed, this Court is generally reluctant to overturn precedent. It is often argued that the Court should be particularly careful overturning statutory precedent that the Legislature is in a position to clarify on its own through new legislation. Nonetheless, this Court has recognized that "legislative acquiescence ... is an exceptionally poor indicator of
 legislative intent."
 
 [18]
 
 Further, this Court has also made clear that egregious departures from the plain language of the text ought to be addressed sooner than later, explaining:
 

 [I]t is to the words of the statute itself that a citizen first looks for guidance in directing his actions. This is the essence of the rule of law: to know in advance what the rules of society are. Thus, if the words of the statute are clear, the actor should be able to expect ... that they will be carried out by all in society, including the courts. In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest. When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court's misconstruction. The reason for this is that the court in distorting the statute was engaged in a form of judicial usurpation that runs counter to the bedrock principle of American constitutionalism, i.e., that the lawmaking power is reposed in the people as reflected in the work of the Legislature, and, absent a constitutional violation, the courts have no legitimacy in overruling or nullifying the people's representatives. Moreover, not only does such a compromising by a court of the citizen's ability to rely on a statute have no constitutional warrant, it can gain no higher pedigree as later courts repeat the error. [
 
 Robinson v. Detroit
 
 ,
 
 462 Mich. 439
 
 , 467-468,
 
 613 N.W.2d 307
 
 (2000).]
 

 In such cases, where the result of a decision effectively "usurp[s]" or "nullif[ies]" the "legislative function," this Court is obligated to correct that decision, regardless whether the Legislature has " 'acquiesced' in the decisions of the Court to which it has not responded ...."
 
 [19]
 
 In my view,
 
 Opdyke
 
 , which was apparently "developed to avoid the arbitrary and unjust results required by an overly mechanistic application of the [statute of frauds],"
 
 [20]
 
 is an ideal candidate for reversal. This Court in
 
 Opdyke
 
 not only usurped the Legislature's power but simultaneously amended the statute of frauds by judicial fiat to frustrate the express intentions of the Legislature,
 
 [21]
 
 i.e., to render void certain agreements, contracts, or promises unless in writing and signed.
 

 In determining whether to overrule a prior case, this Court first considers whether the earlier case was wrongly decided.
 
 [22]
 

 Opdyke
 
 disregarded the language of MCL 566.132 and deviated from this Court's pattern of cases interpreting it.
 
 [23]
 
 The Court stated that "[s]ince the statute of frauds only applies to certain 'contracts', recovery based on a noncontractual promise falls outside the scope of the statute of frauds."
 
 [24]
 
 Yet MCL 566.132(1)(e) expressly applies not just to contracts but also, explicitly,
 to "promise[s]."
 
 [25]
 
 And assuming the goal of the statute of frauds is to protect against fraud and perjury for transactions that the Legislature deemed so significant as to require that the transaction be memorialized in writing, the doctrine of promissory estoppel adds nothing to advance this purpose. As demonstrated in this case, Howell Public Schools has done nothing legally, or even morally, wrong, yet it is now subject to potential liability because plaintiffs have claimed that they relied on a promise. And Howell Public Schools was not even aware of plaintiffs' reliance. Further, even though Howell Public Schools expressly refused to execute a contract with plaintiffs, this Court has essentially imposed the obligation of that contract upon Howell Public Schools.
 

 As cogently explained by amicus curiae Michigan Realtors (amicus),
 
 Opdyke
 
 undermines the good business practices of more than 28,000 appraisers, brokers, and salespersons licensed under Michigan law, who are "consistently taught that there is no entitlement to a commission based upon agreements or promises that are not in writing and are not signed by the party to be charged." The members of amicus are clearly significant stakeholders to this aspect of Michigan law, as they are involved in hundreds of real estate transactions each day. This Court should not dismiss amicus's concern that "[t]he application of promissory estoppel to circumvent the statute of frauds creates an exception to an otherwise clear rule and fosters uncertainty and ambiguity in what are currently fairly 'cut and dried' transactions." In particular, amicus highlights that "[t]he application of promissory estoppel to the ... statute of frauds potentially subjects sellers of residential real estate in Michigan to claims for more than one commission." Members of amicus are not seeking special treatment, but are only requesting that Michigan courts faithfully apply the plain language of the statute of frauds in all cases. Sustaining this Court's decision in
 
 Opdyke
 
 will only continue to undermine the "practical workability" of amicus's good business practices and result in unnecessary and costly litigation.
 
 [26]
 
 Thus, I am convinced that
 
 Opdyke
 
 was wrongly decided.
 

 The notion that promissory estoppel is barred by a legislative directive that particular contracts must be in writing is not radical. Indeed, several out-of-state jurisdictions have enforced the statute of frauds and rejected judicially created exceptions to it for the same reason.
 
 Stearns v. Emery-Waterhouse Co.
 

 [27]
 
 (stating that the application of promissory estoppel "contravenes the policy of the Statute to prevent fraud");
 

 Greaves v. Med. Imaging Sys., Inc.
 

 [28]
 
 ("We have consistently declined to adopt [the application of promissory estoppel to avoid the statute of frauds], although we have considered it in several prior cases.");
 
 Morsinkhoff v. DeLuxe Laundry & Dry Cleaning Co.
 

 [29]
 
 ("To allow recovery on the theory of promissory estoppel would abrogate the purpose and intent of the legislature in enacting the Statute of Frauds and would nullify its fundamental requirements.");
 
 Tiffany Inc. v. WMK Transit Mix, Inc.
 

 [30]
 
 (Allowing a claim for promissory estoppel would mean "the Statute of Frauds would no longer have any effect.");
 
 Sinclair v. Sullivan Chevrolet Co.
 

 [31]
 
 ("Where, however, a case is clearly within the Statute of Frauds, promissory estoppel is inapplicable, for the net effect would be to repeal the Statute completely.");
 
 Austin v. Cash
 

 [32]
 
 (" '[W]here a case is clearly within the statute of frauds, promissory estoppel is inapplicable, for the net effect would be to repeal the statute completely. ... [T]he moral wrong of refusing to be bound by an agreement because it does not comply with the statute of frauds, does not of itself authorize the application of the doctrine of estoppel, because the breach of a promise which the law does not regard as binding is not a fraud.' ");
 
 Anderson Const. Co., Inc. v. Lyon Metal Prod., Inc.
 

 [33]
 
 ("[T]his Court, contrary to the course pursued by some others, has uniformly held that it is without power to engraft exceptions on the statute, and must enforce it as written. ... To hold otherwise would destroy the purpose of the statute to prevent frauds and perjuries.");
 
 Bethune v. City of Mountain Brook
 

 [34]
 
 ("[I]t is well settled in Alabama that an executory agreement which is void under the statute of frauds cannot be made effectual by estoppel merely because it has been acted on by the promisee, and has not been performed by the promisor."); see also
 
 Lovely v. Dierkes
 

 [35]
 
 ("It would seem inconsistent to claim detrimental reliance on an oral contract while acknowledging the importance of a written contract.")
 

 Likewise, our caselaw supports the conclusion that the statute of frauds cannot be circumvented by a promissory estoppel claim. See, e.g.,
 
 Collin v. Kittelberger
 

 [36]
 
 (applying prospectively from effective date of the statute of frauds, any contract for commissions on order of realty must be in writing, but did not affect a contract existing when it took effect);
 
 Paul v. Graham
 

 [37]
 
 (holding that "[i]n order to give the act the effect which the Legislature evidently intended it should have, ... no recovery can be had under this section [of the statute of frauds] unless the agreement therefor is in
 writing");
 
 McGavock v. Ducharme
 

 [38]
 
 (holding that the statute of frauds rendered absolutely void an oral promise to pay 3% commission on the sale of a property);
 
 Slocum v. Smith
 

 [39]
 
 (holding that the provision of the statute of frauds related to promises to pay commissions extended to agreements to purchase as well as agreements to sell, and determining that plaintiff was not entitled to recovery under a quantum meruit claim based on an oral promise in violation of the statute of frauds);
 
 Smith v. Starke
 

 [40]
 
 (holding that oral agreement to find a purchaser for a farm in exchange for commission was void under the statute of frauds, and plaintiff was not permitted recovery under quantum meruit);
 
 Aetna Mtg. Co. v. Dembs
 

 [41]
 
 (holding that the statute of frauds required that an agreement for commission for obtaining mortgage on land be reduced to a signed writing and an oral agreement for commission was not valid). Historically, this Court has consistently construed this particular provision of the statute of frauds to prevent oral promises and claims for equitable remedies from circumventing the statute's writing requirement. Accordingly, the natural conclusion is that
 
 Opdyke
 
 is an aberration.
 
 [42]
 

 To determine whether a case that was wrongly decided should be overruled, the
 Court must "examine reliance interests," specifically:
 

 whether the prior decision defies "practical workability"; whether the prior decision has become so embedded, so fundamental to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations; whether changes in the law or facts no longer justify the prior decision; and whether the prior decision misread or misconstrued a statute.
 
 [
 

 43
 

 ]
 

 Suffice to say that very few people have ever sought to enter an agreement, contract, or promise expecting to enforce the agreement, contract, or promise based on an equitable exception to the statute of frauds. And for those who have done so, they would necessarily be precluded from asserting an equitable claim because they would in effect have "unclean hands." Thus, overruling
 
 Opdyke
 
 would not unsettle a single person's legitimate expectations.
 
 [44]
 

 The concurrence also suggests that
 
 Opdyke
 
 , a case decided by this Court in 1982, ought not be reversed because it is grounded in common law principles of equities that are centuries old. While I agree that "[t]he equitable principle of estoppel is many centuries old," the principle of promissory estoppel was not developed until sometime in the twentieth century, was not embraced by the Michigan Supreme Court until 1977,
 
 [45]
 
 and was not accepted as an exception to the statute of frauds until
 
 Opdyke
 
 in 1982.
 
 Black's Law Dictionary
 
 (10th ed.) reflects that the earliest known use of the phrase "promissory estoppel" in English was in 1924, and scholars recognize that there was "initial judicial reluctance to apply the doctrine after its formulation in section 90 of the first
 
 Restatement of Contracts
 
 ... in 1932."
 
 [46]
 
 Unlike estoppel in general, the doctrine of promissory estoppel stands out, as once suggested, in "that promissory estoppel had become 'perhaps the most radical and expansive development of this century in the law of promissory liability.' "
 
 [47]
 
 Born of the legal realism movement, which espoused "[t]he theory that law is based not on formal rules or principles but instead on judicial decisions deriving from social interests and public policy as conceived by individual judges,"
 
 [48]
 
 the doctrine of promissory estoppel is plainly in tension with the more recent emphasis from this Court on the doctrine of textualism, in which "the words of a governing text are of paramount concern and ... what they fairly convey in their context is what the text means"
 
 [49]
 

 "Courts that have taken a textualist approach with respect to implied terms generally have not identified implied estoppel exceptions."
 
 [50]
 
 Rather, a textualist approach recognizes that where the Legislature has intended for exceptions to apply to the statute of frauds, it has expressly provided those exceptions.
 

 Accordingly, a textualist approach would embrace the notion that when the Legislature intended for common law and other exceptions to apply to the statute of frauds for the uniform commercial code, it expressly provided those exceptions. See MCL 440.2201(3)(a) through (c). This is reflected in Justice MARKMAN 's concurrence in
 
 Vittiglio v. Vittiglio
 
 .
 
 [51]
 
 Although Justice MCCORMACK posits that in
 
 Vittiglio
 
 "the Chief Justice has recognized another equitable doctrine, partial performance, as creating an exception to the statute of frauds," there is a textual basis for applying part performance to remove an agreement from within the statute of frauds. MCL 566.106 and MCL 566.108 were the statute of frauds provisions at issue in
 
 Vittiglio
 
 , and those provisions are distinct from the statute of frauds provision at issue in the instant case, i.e., MCL 566.132(1)(e). MCL 566.106 provides as follows:
 

 No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.
 

 And MCL 566.108 provides as follows:
 

 Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing: Provided, That whenever any lands or interest in lands shall be sold at public auction and the auctioneer or the clerk of the auction at the time of the sale enters in a sale book a memorandum specifying the description and price of the land sold and the name of the purchaser, such memorandum, together with the auction bills, catalog or written or printed notice of sale containing the name of the person on whose account the sale is made and the terms of sale, shall be deemed a memorandum of the contract of sale within the meaning of this section.
 

 Although MCL 566.106 and MCL 566.108 are distinct statute of frauds provisions from MCL 566.132, all three provisions are contained within Chapter 566 of the Michigan Compiled Laws. And MCL 566.110 provides as follows: "Nothing in this chapter [i.e., Chapter 566] contained shall be construed to abridge the powers of the court of chancery to compel the specific performance of agreements, in cases of
 
 part performance
 
 of such agreements." That is, the Legislature has explicitly adopted a provision to make clear that "part performance" may operate as an exception to the statute of frauds.
 

 That the Legislature felt the need to affirmatively specify that "part performance"
 

 may constitute an exception to the statute of frauds reinforces the proposition that, as actually written, the statute of frauds does not already contain equitable exceptions of the sort read into it by the majority in acquiescing to
 
 Opdyke
 
 . Clearly, where the Legislature believes it proper to establish an exception to the statute of frauds, it has provided for such exception. When the history of this Court's retreat from textually grounded interpretations of the law is written, its erosion of the statute of frauds in such cases as this will be writ large.
 

 III. CONCLUSION
 

 I would overrule this Court's decision in
 
 Opdyke
 
 and apply the plain language of MCL 566.132(1). Accordingly, I would reverse the opinion and order of the Court of Appeals and remand to the circuit court to reinstate the judgment in favor of Howell Public Schools.
 

 Markman, C.J., and Wilder, J., join the statement of Zahra, J.
 

 Opdyke Investment Co. v. Norris Grain Co.
 
 ,
 
 413 Mich. 354
 
 ,
 
 320 N.W.2d 836
 
 (1982).
 

 Plaintiffs and St. John reached a settlement and St. John was dismissed from the case.
 

 North American Brokers v. Howell Pub. Sch.
 
 , unpublished per curiam opinion of the Court of Appeals, issued February 9, 2017 (Docket No. 330126), p. 3,
 
 2017 WL 535555
 
 . Indeed, the panel "acknowledge[d] that [its] opinion reaches the
 
 correct
 
 result under our present legal framework," yet stated, "it is the
 
 wrong
 
 result."
 
 Id
 
 . at 3 n. 2.
 

 North American Brokers
 
 , unpub. op. at 3 (quotation marks and citation omitted).
 

 Id
 
 . at 3 n. 2.
 

 Kelly-Stehney & Assoc., Inc. v. MacDonald's Indus. Prod., Inc.
 
 ,
 
 254 Mich. App. 608
 
 , 613-615,
 
 658 N.W.2d 494
 
 (2003), vacated on other grounds
 
 469 Mich. 1046
 
 ,
 
 677 N.W.2d 838
 
 (2004).
 

 Id
 
 . at 615,
 
 658 N.W.2d 494
 
 .
 

 Opdyke
 
 ,
 
 413 Mich. at 365
 
 ,
 
 320 N.W.2d 836
 
 .
 

 Kelly-Stehney
 
 ,
 
 254 Mich. App. at 615-616
 
 ,
 
 658 N.W.2d 494
 
 , quoting
 
 Crown Technology Park v. D & N Bank, FSB
 
 ,
 
 242 Mich. App. 538
 
 , 548 n. 4,
 
 619 N.W.2d 66
 
 (2000), citing Scalia,
 
 A Matter of Interpretation: Federal Courts and the Law
 
 (New Jersey: Princeton University Press, 1997), pp. 14-29.
 

 McCahan v. Brennan,
 

 492 Mich. 730
 
 , 749,
 
 822 N.W.2d 747
 
 (2012).
 

 Collier & DeRosier,
 
 Understanding The Overrulings: A Response To Robert Sedler
 
 ,
 
 56 Wayne L. Rev. 1761
 
 , 1777-1778 (2010).
 

 Opdyke
 
 ,
 
 413 Mich. at 365
 
 ,
 
 320 N.W.2d 836
 
 .
 

 Rowland v. Washtenaw Co. Rd. Comm.
 
 ,
 
 477 Mich. 197
 
 , 213,
 
 731 N.W.2d 41
 
 (2007).
 

 Robinson
 
 ,
 
 462 Mich. 439
 
 , 463-468,
 
 613 N.W.2d 307
 
 .
 

 MCL 566.132 has been amended and renumbered since
 
 Opdyke
 
 was decided, but the changes have no bearing on this analysis. See
 
 1974 PA 343
 
 and
 
 1992 PA 245
 
 .
 

 Opdyke
 
 ,
 
 413 Mich. at 370
 
 ,
 
 320 N.W.2d 836
 
 .
 

 The version of the provision in effect when
 
 Opdyke
 
 was decided, MCL 566.132(e), also applied to a "promise." See
 
 1974 PA 343
 
 .
 

 I strongly disagree with the concurrence that amicus has presented policy arguments that "are more properly directed towards the Capitol Building, not the Hall of Justice." The only policy that Howell Public Schools and amicus seek is to apply is that which the Legislature has already written in the statute of frauds. The problem is not that the Legislature has failed to act; it is that this Court refuses to apply the law by giving plain and ordinary meaning to the legislative mandate that "[a]n agreement, promise, or contract to pay a commission for or upon the sale of an interest in real estate" "must be in writing." MCL 566.132(1)(e). And to suggest that these arguments are better directed towards the same body that wrote this clear and unambiguous directive is truly puzzling, given this Court's refusal to apply the statute of frauds as currently written.
 

 Stearns v. Emery-Waterhouse Co.
 
 ,
 
 596 A.2d 72
 
 , 74-75 (Me., 1991).
 

 Greaves v. Med. Imaging Sys., Inc.
 
 ,
 
 124 Wash. 2d 389
 
 ,
 
 879 P.2d 276
 
 (1994).
 

 Morsinkhoff v. DeLuxe Laundry & Dry Cleaning Co.
 
 ,
 
 344 S.W.2d 639
 
 , 644 (Mo. App., 1961).
 

 Tiffany Inc. v. WMK Transit Mix, Inc.
 
 ,
 
 16 Ariz. App. 415
 
 , 421,
 
 493 P.2d 1220
 
 (1972).
 

 Sinclair v. Sullivan Chevrolet Co.
 
 ,
 
 45 Ill. App. 2d 10
 
 , 17,
 
 195 N.E.2d 250
 
 (1964).
 

 Austin v. Cash
 
 ,
 
 274 Mont. 54
 
 , 62,
 
 906 P.2d 669
 
 (1995), quoting
 
 Schwedes v. Romain
 
 ,
 
 179 Mont. 466
 
 , 472,
 
 587 P.2d 388
 
 (1978).
 

 Anderson Const. Co., Inc. v. Lyon Metal Prod., Inc.
 
 ,
 
 370 So.2d 935
 
 , 937 (Miss., 1979) (quotation marks and citation omitted).
 

 Bethune v. City of Mountain Brook
 
 ,
 
 293 Ala. 89
 
 , 93,
 
 300 So.2d 350
 
 (1974).
 

 Lovely v. Dierkes
 
 ,
 
 132 Mich. App. 485
 
 , 492 n. 1,
 
 347 N.W.2d 752
 
 (1984) ( Peterson , J., dissenting).
 

 Collin v. Kittelberger
 
 ,
 
 193 Mich. 133
 
 ,
 
 159 N.W. 482
 
 (1916).
 

 Paul v. Graham
 
 ,
 
 193 Mich. 447
 
 , 451,
 
 160 N.W. 616
 
 (1916).
 

 McGavock v. Ducharme
 
 ,
 
 192 Mich. 98
 
 ,
 
 158 N.W. 173
 
 (1916).
 

 Slocum v. Smith
 
 ,
 
 195 Mich. 281
 
 ,
 
 161 N.W. 830
 
 (1917).
 

 Smith v. Starke
 
 ,
 
 196 Mich. 311
 
 ,
 
 162 N.W. 998
 
 (1917).
 

 Aetna Mtg. Co. v. Dembs
 
 ,
 
 13 Mich. App. 686
 
 ,
 
 164 N.W.2d 771
 
 (1968).
 

 It is passing strange that the concurrence would quote Justice Antonin Scalia to place the question whether
 
 Opdyke
 
 should be overruled on equal footing with the questions "whether the Alien and Sedition Acts of 1798 were in accord with the original understanding of the First Amendment ... [and] whether
 
 Marbury v. Madison
 
 was decided correctly." As Justice Scalia noted in his more recent book with Bryan Garner,
 
 Reading Law: The Interpretation of Legal Texts
 
 :
 

 We do not propose that all the decisions made, and doctrines adopted, in the past half-century or so of unrestrained constitutional improvisation be set aside-only those that fail to meet the criteria for stare decisis. These include consideration of (1) whether harm will be caused to those who justifiably relied on the decision, (2) how clear it is that the decision was textually and historically wrong, (3) whether the decision has been generally accepted by society, and (4) whether the decision permanently places courts in the position of making policy calls appropriate for elected officials. [Scalia & Garner,
 
 Reading Law: The Interpretation of Legal Texts
 
 (St. Paul: Thomson/West, 2012), p. 412 (citations omitted) ].
 

 Opdyke
 
 is not only inconsistent with Michigan caselaw that suggests the statute of frauds cannot be circumvented by a promissory estoppel, see notes 28 through 32 of this statement, it has on at least three occasions been criticized in the Court of Appeals. See, e.g.,
 
 Lovely
 
 ,
 
 132 Mich. App. at 491-496
 
 ,
 
 347 N.W.2d 752
 
 ( Peterson , J., dissenting);
 
 Kelly-Stehney & Assoc., Inc.
 
 ,
 
 254 Mich. App. at 613-615
 
 ,
 
 658 N.W.2d 494
 
 ; and
 
 North American Brokers
 
 , unpub. op. at 3, the opinion of the Court of Appeals in the instant case. Thus
 
 Opdyke
 
 hardly qualifies, in the vein of
 
 Marbury v. Madison
 
 , 5 U.S. (1 Cranch) 137,
 
 2 L.Ed. 60
 
 (1803), as "generally accepted by society." Moreover,
 
 Opdyke
 
 is textually wrong, and permanently leaves this Court and lower courts in the position of determining on a case-by-case basis which of the many competing policy interests presented deserves exception from application of the plain language of the statute of frauds.
 

 The concurrence caricatures the dissenting position as "dogmatic textualism." To the contrary, the dissent merely recognizes that it is the text of the law to which the people first look to understand their rights and responsibilities. And the "doctrine [of stare decisis] is not, to be sure, an imprisonment of reason."
 
 United States v. Int'l Boxing Club of NY
 
 ,
 
 348 U.S. 236
 
 , 249,
 
 75 S.Ct. 259
 
 ,
 
 99 L.Ed. 290
 
 (1955) (Frankfurter, J., dissenting).
 

 Rowland
 
 ,
 
 477 Mich. at 215
 
 ,
 
 731 N.W.2d 41
 
 , citing
 
 Robinson
 
 ,
 
 462 Mich. at 464-467
 
 ,
 
 613 N.W.2d 307
 
 .
 

 The fact that a party may eventually rely on promissory estoppel or another equitable exception after they make an oral agreement and once litigation has ensued is irrelevant to the stare decisis analysis. In analyzing reliance interests and whether the prior decision has become so embedded or fundamental to everyone's expectations that to change it would produce significant dislocations, this Court does not look to after-the-fact awareness of the previous caselaw. See
 
 Robinson
 
 ,
 
 462 Mich. at 466-467
 
 ,
 
 613 N.W.2d 307
 
 ("Such after-the-fact awareness does not rise to the level of a reliance interest because to have reliance the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event.").
 

 Huhtala v. Travelers Ins Co.
 
 ,
 
 401 Mich. 118
 
 , 126-130,
 
 257 N.W.2d 640
 
 (1977).
 

 Feinman,
 
 Promissory Estoppel and Judicial Method
 
 ,
 
 97 Harv. L. Rev. 678
 
 , 678 (1984).
 

 Knapp,
 
 Rescuing Reliance: The Perils Of Promissory Estoppel
 
 ,
 
 49 Hastings L. J. 1191
 
 , 1192 (1998) (citation omitted).
 

 Black's Law Dictionary
 
 (10th ed.).
 

 Id
 
 .
 

 Maggs,
 
 Estoppel And Textualism
 
 ,
 
 54 Am. J. Comp. L. 167
 
 , 178 (2006).
 

 Vittiglio v. Vittiglio
 
 ,
 
 493 Mich. 936
 
 ,
 
 825 N.W.2d 584
 
 (2013) ( Markman , J., concurring).